**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **TRUSTEES OF THE IAM NATIONAL PENSION FUND,** | |
| *Plaintiffs,* | |
| **v.** | Case No. 20-cv-433 (RCL) |
| **M & K EMPLOYEE SOLUTIONS, LLC,** *et al.,* | |
| *Defendants.* | |

**MEMORANDUM OPINION**

Approximately one year ago, the Court preliminarily enjoined six defendants in this matter to pay two months' worth of defaulted withdrawal-liability payments to the IAM National Pension Fund ("the Fund"). ECF No. 22. At the time, the parties were arbitrating the amount of withdrawal liability assessed. *See* ECF No. 62-9 at 2. Today, arbitration is still pending, and not a dollar of withdrawal liability has been paid. *See* ECF No. 62-2 at ¶ 12.

Plaintiffs, the Trustees of the Fund ("the Trustees"), now move for a second preliminary injunction. ECF No. 62. This time, they seek payment of the full amount of withdrawal liability assessed from the original six defendants ("the M&K Employees Defendants"), plus a newly added seventh (Laborforce LLC). *Id.*; *see* ECF No. 56, Third Am. Compl. ¶¶ 25, 77–81. Rather than timely opposing the Trustees' preliminary-injunction motion, ECF No. 62, the M&K Employees Defendants separately moved for a scheduling conference or, alternatively, for an enlargement of the briefing schedule on the Trustees' motion. ECF No. 63; *see* LCvR 65.1(c). Laborforce LLC also did not oppose the Trustees' motion but instead moved to join the M&K Employees Defendants' motion for a scheduling conference. *See* ECF No. 68.

For the reasons set forth below, the Court will **GRANT IN PART** and **DENY IN PART** the Trustees' preliminary-injunction motion, ECF No. 62. Though the Court will preliminarily enjoin the M&K Employees Defendants and Laborforce LLC to pay the full amount of withdrawal liability assessed to M & K Employee Solutions, LLC-Alsip, it will not order the immediate payment of liquidated damages and interest on that amount. The Court will further **GRANT** Laborforce LLC's motion, ECF No. 68, to join the M&K Employees Defendants' motion for a scheduling conference or, alternatively, to enlarge the briefing dates, ECF No. 63, but will **DENY** the M&K Employees Defendants' motion, ECF No. 63. Finally, in light of its ruling today, the Court will **VACATE** the portion of its March 19, 2020 Order preliminarily enjoining the M&K Employees Defendants to pay "liquidated damages, interest, attorneys' fees, and costs, in an amount to be determined." ECF No. 22 at 2.

## I. BACKGROUND

### A. Facts & Procedural History

M&K Truck is a network of full-service commercial-vehicle dealerships and service centers that was founded in Michigan. Third Am. Compl. ¶¶ 28–29. In mid-2012, M&K Truck broke into the Illinois market by assuming the operations of three existing dealerships in the Chicagoland area. *Id.* at ¶ 29. M&K Truck structured those transactions so that one group of LLCs (collectively the "M&K Sales entities") purchased the Chicago dealers' assets, while another group of LLCs (collectively the "M&K Employees entities") re-hired the Chicago dealers' employees. *Id.* at ¶ 30. The M&K Employees entities would then lease those re-hired employees to the M&K Sales entities. *Id.* at ¶ 31.

Relevant to the present motions are the M&K Employees entities, which include M & K Employee Solutions, LLC ("M&K Employee Solutions"), and five other "Series" LLCs created

2

under it: M & K Employee Solutions, LLC-Alsip ("M&K Employees Alsip"); M & K Employees Solutions, LLC-Illinois Leasing ("M&K Employees Illinois Leasing"), M & K Employee Solutions, LLC-Joliet ("M&K Employees Joliet"); M & K Employee Solutions, LLC-Northern Illinois ("M&K Employees Northern Illinois"); and M & K Employee Solutions, LLC-Summit ("M&K Employees Summit"). *Id.* at ¶¶ 15–20; *see* ECF No. 62-14 at 2–6. At the time they were established, each of these Series LLCs shared the same sole member and manager: Rainelle Jansma. *See* ECF No. 62-12 at 6; ECF No. 62-14 at 2–6.

Three of the M&K Employees entities—M&K Employees Alsip, M&K Employees Joliet, and M&K Employees Summit—subsequently entered into collective-bargaining agreements with Automobile Mechanics' Local 701, International Association of Machinists and Aerospace Workers, AFL-CIO ("the Union"). Third Am. Compl. at ¶ 33; *see* ECF No. 62-1 at 7. Under the terms of those agreements, M&K Employees Alsip, M&K Employees Joliet, and M&K Employees Summit were required to pay contributions to the IAM National Pension Fund ("the Fund"), which is a multiemployer pension plan managed from Washington, D.C. Third Am. Compl. ¶ 33; *see* 29 U.S.C. § 1002(37).

By December 31, 2018, M&K Employees Alsip, M&K Employees Joliet, and M&K Employees Summit ceased covered operations, thus effectuating a "complete withdrawal" from the Fund. Third Am. Compl. ¶ 40; *see* 29 U.S.C. § 1383. Doing so triggered an obligation to pay "withdrawal liability" pursuant to the Multiemployer Pension Plan Amendments Act ("MPPAA"). *See* 29 U.S.C. § 1381(a). Generally speaking, "withdrawal liability" is an employer's share of a multiemployer pension plan's unfunded, vested benefits. *Id.* § 1381(b)(1).

On June 14, 2019, pursuant to the procedures set forth in the MPPAA, the Fund notified M&K Employees Alsip that it had effectuated a complete withdrawal from the Fund and that its

allocated share of the unfunded, vested benefits (i.e., its "withdrawal liability") was $6,158,482.

Third Am. Compl. ¶ 41; *see* 29 U.S.C. §§ 1382 & 1399(b)(1)(A)(i). The Fund also informed M&K

Employees Alsip that this amount was due in twenty installments, with the first payment due by

August 13, 2019. Third Am. Compl. ¶ 41; *see* 29 U.S.C. § 1399(b)(1)(A)–(B). But M&K

Employees Alsip never made any of these payments. *See* ECF No. 62-2 ¶ 12. Instead, on

November 20, 2019, it initiated arbitration to contest the amount of withdrawal liability assessed

to it by the Fund. *See id.* at ¶ 10; ECF No. 62-9 at 2.

Several months later, in February 2020, the Trustees (in their capacities as fiduciaries for

the Fund) sued M&K Employees Alsip to recover the withdrawal liability assessed to it. Compl.

¶¶ 16–26. They also sued M&K Employees Solutions, M&K Employees Illinois Leasing, M&K

Employees Joliet, M&K Employees Northern Illinois, and M&K Employees Summit as "trade[s]

or business[es] under common control" with M&K Employees Alsip at the time of M&K

Employees Alsip's complete withdrawal from the Fund. *Id.* at ¶¶ 27–31.

When the Trustees filed their Complaint, they simultaneously moved for a preliminary

injunction. ECF No. 2. Their motion asked for the immediate payment of $705,442, which

represented the sum of the first two defaulted withdrawal-liability payments, plus "liquidated

damages, interest, attorneys' fees, and costs, in an amount to be determined." ECF No. 2-1 at 8.

The Trustees sought to preliminarily enjoin M&K Employees Alsip, as well as the five other M&K

Employees entities (collectively the "M&K Employees Defendants"). *See id.* The M&K

Employees Defendants did not oppose the motion and, on March 19, 2020, the Court granted it.

*See* ECF No. 22.

Since the Court granted the Trustees' preliminary-injunction motion in March 2020, two

developments relevant to the present motions have occurred. First, in September 2020, the Fund

accelerated the withdrawal liability assessed to M&K Employees Alsip pursuant to the MPPAA and demanded that it pay the full amount assessed. ECF No. 62-1 at 8–9; *see* 29 U.S.C. § 1399(c)(5).[1] Second, in March 2021, the Trustees filed a Third Amended Complaint, which added a claim for recovery of withdrawal liability against Laborforce LLC, the M&K Employees Defendants' alleged successor. *See* Third Am. Compl. ¶¶ 77–81.[2]

### B. The Present Motions

In light of these developments, the Trustees now move for a second preliminary injunction. ECF No. 62.[3] Their motion, filed April 1, 2021, asks the Court to preliminarily enjoin the M&K Employees Defendants and Laborforce LLC to immediately pay the full amount of withdrawal liability assessed by the Fund to M&K Employees Alsip, plus liquidated damages and interest on that amount. ECF No. 62-2. In support of this request, the Trustees argue that they have shown a likelihood of success on the merits of their claims seeking the payment of withdrawal liability from

---

[1] Section 1399(c)(5) provides in relevant part that "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of the unpaid annual withdrawal liability payments . . . plus interest, if any, in whole or in part, without penalty." 29 U.S.C. § 1399(c)(5).

[2] In total, the Third Amended Complaint brings claims for payment of the withdrawal liability assessed to M&K Employees Alsip against six groups of defendants: (1) M&K Employees Alsip, as the entity assessed the withdrawal liability, Third Am. Compl. ¶¶ 48–52 (Count I), (2) M&K Employees Solutions, M&K Employees Illinois Leasing, M&K Employees Joliet, M&K Employees Northern Illinois, and M&K Employees Summit, as trades or businesses "under common control" with M&K Employees Alsip at the time it withdrew from the Fund, *id.* at ¶¶ 53–57 (Count II), (3) the M&K Sales entities as a "single" and "joint" employer with, and alter ego of, M&K Employees Alsip, *id.* at ¶¶ 62–66 (Count IV), ¶¶ 67–71 (Count V), ¶¶ 72–76 (Count VI), (4) Laborforce, as the M&K Employees entities' successor, *id.* at ¶¶ 77–81 (Count VII), (5) the "fictitious entities XYZ Corporations 1–10," as trades or businesses under common control with M&K Employees Alsip, *id.* at ¶¶ 82–85, and (6) the "fictitious individuals John and Jane Does 1–10" as "sole proprietorships under common control" with M&K Employees Alsip, *id.* at ¶¶ 86–89.

[3] Apparently unfamiliar with the Local Rules governing applications for preliminary injunctions, *see* LCvR 65.1(c), the Trustees captioned their filing as a "notice of motion for an order to show cause for entry of a preliminary injunction." *See* ECF No. 62. Given the substance of the Trustees' request in their supporting memorandum, however, the Court will construe this filing as a preliminary-injunction motion. *See* ECF No. 62-1. Indeed, the supporting memorandum argues that all four preliminary-injunction requirements have been met and concludes by asking the Court to "enter an order preliminarily enjoining the M&K Employees Defendants and Laborforce [LLC] to pay the Fund $7,790,188.20." *Id.* at 22.

these parties while arbitration is pending, that the Fund is likely to suffer irreparable harm absent preliminary relief, that the harm to the Fund outweighs any harm to the defendants, and that the public interest favors a preliminary injunction. *Id.* at 11–20.

Neither the M&K Employees Defendants, nor Laborforce LLC,[4] timely opposed the Trustees' request on the merits. *See* LCvR 65.1(c) (providing that the opposition to a preliminary-injunction motion "shall be served and filed within seven days after service of the application for a preliminary injunction"). Instead, on April 8, 2021, the M&K Employees Defendants moved for a scheduling conference or, in the alternative, to enlarge the briefing dates on the Trustees' motion. ECF No. 63. In support of this request, the M&K Employees Defendants represent that the Trustees recently appealed "two adverse arbitration awards to this Court," both of which "directly implicate issues in this case" and will require "motions to consolidate with or stay this action." *Id.* at 2. Accordingly, defendants say, a scheduling conference is necessary to "save the Court and the parties substantial time and resources." *Id.*

The Trustees opposed the M&K Employees Defendants' motion for a scheduling conference, ECF No. 64, and the M&K Employees Defendants replied, ECF No. 65. Laborforce LLC then moved to join the M&K Employees Defendants' motion for a scheduling conference. *See* ECF No. 68. It argues that a scheduling conference would be appropriate given the "procedural roller coaster" started by the Trustees. *Id.* at 2. And it notes that the Trustees do not consent to the relief requested. *Id.* at 3. All three motions are now ripe for consideration.

---

[4] Laborforce LLC waived service of process on March 18, 2021, exactly two weeks before the Trustees filed the instant preliminary-injunction motion. *See* ECF Nos. 58 & 62. Laborforce LLC's answer is due on May 10, 2021. ECF No. 58.

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a party must establish (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in her favor, and (4) that a preliminary injunction is in the public interest. *Id.* at 20. The D.C. Circuit has added a gloss on this standard, requiring that the "likelihood of success" must be "substantial." *Davis v. Pension Benefit Gaur. Corp.*, 596 F. Supp. 2d 1, 2 (D.C. Cir. 2008). And though the D.C. Circuit has not yet decided whether courts ought to evaluate these four factors on a "sliding scale," *see Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 334 (D.C. Cir. 2018), it has stated that the movant must show that all four factors, taken together, weigh in favor of a preliminary injunction. *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014).

Though the party seeking a preliminary injunction may rely on "'evidence that is less complete than in a trial on the merits,' she nevertheless bears the burden of producing credible evidence sufficient to demonstrate her entitlement to injunctive relief." *Workman v. Bissessar*, 275 F. Supp. 3d 263, 267 (D.D.C. 2017) (quoting *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1022–23 (D.C. Cir. 1998)). Finally, though courts generally have discretion in granting equitable relief, "equitable discretion must not frustrate Congress's ends." *Boland v. Wasco, Inc.*, 50 F. Supp. 3d 15, 19–20 (D.D.C. 2014) (citing *Albemarle Paper Co. v. Moody*, 442 U.S. 405, 409 (1975)).

## III. ANALYSIS

In their preliminary-injunction motion, the Trustees ask the Court to enjoin the M&K Employees Defendants and Laborforce LLC to immediately pay three sums: (1) the full, accelerated amount of withdrawal liability assessed by the Fund to M&K Employees Alsip, (2) liquidated damages based on the amount of withdrawal liability assessed, and (3) interest based on the amount of withdrawal liability assessed, calculated through April 2, 2021. ECF No. 62-1 at 11. The M&K Employees Defendants and Laborforce LLC do not object to or otherwise dispute these requests. *See* ECF Nos. 63 & 68; *see* LCvR 65.1(c). Nevertheless, the Trustees must still meet their burden of showing that a preliminary injunction is appropriate. *See, e.g.*, *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("It is frequently observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.") (quoting 11A Wright, Miller & Kane, *Federal Practice & Procedure* § 2948 (2d ed. 1995)). The Court will thus evaluate the Trustees' three requests under the requisite factors, beginning with their request for withdrawal liability and then turning to the prayer for liquidated damages and interest.

### A. The Court Will Preliminarily Enjoin the M&K Employees Defendants and Laborforce LLC to Pay the Full Amount of Withdrawal Liability Assessed to M&K Employees Alsip

#### i.  Likelihood of Success on the Merits

The Trustees first request the immediate payment of the full amount of withdrawal liability assessed to M&K Employees Alsip. *See* ECF No. 62-1 at 11–14. They demand this payment not only from M&K Employees Alsip, but also from the five other M&K Employees Defendants (M&K Employees Solutions, M&K Employees Illinois Leasing, M&K Employees Joliet, M&K Employees Northern Illinois, and M&K Employees Summit) as "trade[s] or business[es] under

common control" with M&K Employees Alsip at the time it withdrew from the Fund, and from Laborforce LLC, as the M&K Employee entities' alleged successor. *See* Third. Am. Compl. ¶¶ 53–57, 77–81. Because the Trustees bring claims against these defendants for the payment of withdrawal liability pending arbitration under different legal theories, the Court must consider the parties separately when assessing the likelihood of success on the merits.

### 1. *M&K Employees Alsip*

The Trustees have shown a likelihood of success on the merits of their claim for the payment of withdrawal liability against M&K Employees Alsip during the pendency of arbitration. *See* Third Am. Compl. ¶¶ 48–52.[5] It is well-settled that initiating arbitration to contest the amount of withdrawal liability assessed does not relieve an employer from paying withdrawal liability during the pendency of arbitration. *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calif., Inc.*, 522 U.S. 192, 197 (1997); *see* 29 U.S.C. § 1401(d) (providing that withdrawal-liability "[p]ayments *shall be made* by an employer in accordance with the [plan's] determinations . . . until the arbitrator issues a final decision") (emphasis added); *id.* at § 1399(c)(2) ("Withdrawal liability *shall be payable* in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand *notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule*.") (emphasis added). Thus, to succeed on a claim for recovery of withdrawal liability pending arbitration, the Trustees need only show (1) that they made a demand for withdrawal liability from M&K Employees Alsip pursuant to the MPPAA, and (2) that M&K Employees Alsip has not paid

---

[5] The Trustees bring their claim against M&K Employees Alsip under 29 U.S.C. § 1451(a)(1), which provides that "a plan fiduciary . . . who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan . . . may bring an action for appropriate legal or equitable relief, or both." 29 U.S.C. § 1451(a)(1); *see* Third Am. Compl. ¶¶ 48–52.

the amount assessed. *See* 29 U.S.C. § 1401(d); *cf. Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 129 (3d Cir. 1997).

The evidence submitted in support of the Trustees' preliminary-injunction motion does just that. On June 14, 2019, the Fund sent M&K Employees Alsip a formal "Notice and Demand." ECF No. 62-7 at 1. Consistent with the requirements set forth in the MPPAA, the letter informed M&K Employees Alsip that it had effectuated a complete withdrawal from the Fund as of December 31, 2018, assessed M&K Employees Alsip's withdrawal liability as $6,158,482, and demanded payment in twenty quarterly installments with the first due by August 13, 2019. ECF No. 62-7 at 2; *see* 29 U.S.C. § 1399(b)(1)(A)–(B). On September 19, 2019, the Fund notified M&K Employees Alsip that it was in default of its first interim payment of $352,721 and gave M&K Employees Alsip an opportunity to cure this default. ECF No. 62-8 at 1. Instead of paying, M&K Employees Alsip initiated arbitration to challenge the Fund's assessment of the amount of withdrawal liability owed. ECF No. 62-9 at 2. Approximately one year later, the Fund notified M&K Employees Alsip that it was in default of its payments and that the Fund had elected to accelerate liability pursuant to 29 U.S.C. § 1399(c)(5). ECF No. 62-10 at 1–2. The Fund then demanded immediate payment of the full amount of withdrawal liability assessed. *See id.* at 1. As of March 18, 2021, M&K Employees Alsip have not paid a dollar. ECF No. 62-2 at ¶ 12.

With this evidence, the Trustees have shown a substantial likelihood of success on the merits of their claim for payment of withdrawal liability against M&K Employees Alsip. *See Connors v. Brady-Cline Coal Co.* ("*Brady-Cline Coal Co.*"), 668 F. Supp. 5, 6–7 (D.D.C. 1987) (granting summary judgment for the trustees of a multiemployer pension fund when the employer-defendant failed to pay the assessed withdrawal liability during the pendency of arbitration); *IAM Nat. Pension Fund Ben. Plan A v. Dravo Corp.*, 641 F. Supp. 50, 51–52 (D.D.C. 1985) (same).

2.  *M&K Employees Solutions, M&K Employees Illinois Leasing, M&K Employees*
    *Joliet, M&K Employees Northern Illinois, and M&K Employees Summit*

The Trustees also ask the Court to preliminarily enjoin M&K Employees Solutions, M&K

Employees Illinois Leasing, M&K Employees Joliet, M&K Employees Northern Illinois, and

M&K Employees Summit as "trade[s] or business[es]" in M&K Employees Alsip's "common

control" at the time M&K Employees Alsip withdrew from the Fund. ECF No. 62-1 at 13–14.

Specifically, the Trustees' Third Amended Complaint brings a claim against these five entities for

the payment of withdrawal liability pursuant to 29 U.S.C. § 1451(a)(1). Third Am. Compl. ¶¶ 53–

57. They allege that these five entities are "each a trade or business [that were] under common

control with M&K Employees Alsip at the time of M&K Employees Alsip's complete withdrawal

from the Fund" and thus are "jointly and severally liable" with M&K Employees Alsip "for the

withdrawal liability resulting from M&K Employees' complete withdrawal from the Fund." *Id.* at

¶¶ 55–56.

The Trustees have established a likelihood of success on the merits of their claim for

payment of withdrawal liability pending arbitration as to these five defendants too. The MPPAA

extends a withdrawing employer's withdrawal liability to all "trades or businesses" that are under

"common control." 29 U.S.C. § 1301(b)(1); *accord Connors v. Incoal, Inc.* ("*Incoal Inc.*"),

995 F.2d 245, 249 (D.C. Cir. 1993). Thus, "[o]nce liability of the principal employer is established,

any enterprise that is (1) a 'trade or business' and (2) under 'common control' with the withdrawing

employer is jointly and severally liable for the principal employer's withdrawal liability." *Incoal*

*Inc.*, 995 F.2d at 249 (quoting 29 U.S.C. § 1301(b)(1)). An entity is a "trade or business" if its

"primary purpose of engaging in [an] activity [is] for income or profit." *Id.* at 250 (quoting *Comm'r*

*of Internal Revenue v. Groetzinger*, 480 U.S. 23, 35 (1987)). "A sporadic activity, a hobby, or an

amusement diversion does not qualify." *Id.* (quoting *Groetzinger*, 480 U.S. at 35). And an entity

is under "common control" with the withdrawing employer when, among other circumstances, "the same five or fewer persons who are individuals, estates, or trusts" own a controlling interest in the withdrawing employer and the other entity. 26 C.F.R. § 1.414(c)-2(c); *see* 29 U.S.C. § 1301(b)(1).

Here, the Trustees have put forth sufficient evidence of both elements to show a likelihood of success on the merits of their claim against M&K Employees Solutions, M&K Employees Illinois Leasing, M&K Employees Joliet, M&K Employees Northern Illinois, and M&K Employees Summit. As for the "trade or business" requirement, the M&K Employees Defendants admit in their Answer to the Trustees' Third Amended Complaint that these five entities are all for-profit entities. *See* Answer, ECF No. 61, ¶¶ 15, 17–20. And as for the "common control" requirement, the M&K Employees Defendants also admit in their Answer that "as of December 31, 2018," the time when M&K Employees Alsip withdrew from the fund, Chad Boucher was the "sole member and manager" of all five entities. *See* Answer ¶¶ 15, 17–20; *see also* 29 U.S.C. § 1301(b)(1); 26 C.F.R. § 1.414(c)-2(c). The Trustees have thus shown a likelihood of success on the merits of their claim for withdrawal liability pending arbitration against the five other M&K Employees Defendants.

### 3. *Laborforce LLC*

Finally, the Trustees also ask to preliminarily enjoin Laborforce LLC as jointly and severally liable for the outstanding withdrawal liability owed by M&K Employees Alsip. ECF No. 62-1 at 14–15. In their Third Amended Complaint, the Trustees bring a claim against Laborforce LLC for the payment of withdrawal liability pursuant to 29 U.S.C. § 1451. Third Am. Compl. ¶¶ 78–80. Specifically, the Trustees allege that after M&K Employees Alsip effected a complete withdrawal from the Fund, Laborforce LLC hired "all or substantially all" of M&K Employees

Alsip's employees and is thus jointly and severally liable for M&K Employees Alsip's withdrawal liability as its "successor." *Id.* And they further allege that Laborforce LLC had notice of M&K Employees Alsip's "obligations to remit contributions and withdrawal liability to the Fund, by virtue of the overlap in their ownership, management, and personnel." *Id.* at ¶ 79.

The Trustees have shown a likelihood of success on the merits of this claim as well. The text of the MPPAA does not address whether the successor of an employer who owes withdrawal liability can be held liable for that sum. *See* 29 U.S.C. § 1381. Generally speaking, when one entity sells its assets to another, the purchasing entity does not assume the seller's liabilities. *Holland v. Williams Mountain Coal Co.*, 256 F.3d 819, 824 (D.C. Cir. 2001). There are, however, several well-recognized exceptions to that rule. *Id.* For example, a successor may be held liable for its predecessor's liabilities when the successor's business is a "mere continuation" of the predecessor's operations or when the successor "expressly or impliedly assumed" the liability in question. *Id.*

The D.C. Circuit has not yet considered the issue of successor liability in a case like this, i.e., one where an employer assessed with withdrawal liability allegedly sells its assets to another entity. *See, e.g., Bd. of Trustees of Unite Here Local 25 v. MR Watergate LLC*, 677 F. Supp. 2d 229, 232 (D.D.C. 2010). The Circuits that have considered successor liability in this context, however, agree that a successor can be held liable for its predecessor's withdrawal liability when the successor (1) "substantially assumes the predecessor's assets," (2) "continues the predecessor's operations without interruption or substantial change," and (3) had notice of the predecessor's withdrawal liability at the time the successor acquired the predecessor's assets. *Indiana Electrical Workers Pension Benefit Fund v. ManWeb Servs., Inc.* ("*ManWeb II*"), 884 F.3d 770, 776 (7th Cir. 2018) (quoting *Upholsterers' Intern. Union Pension Fund v. Artistic Furniture of Pontiac,*

920 F.2d 1323, 1326 (7th Cir. 1990)); *accord Heavenly Hana LLC v. Hotel Union & Hotel Indus. of Hawaii Pension Plan*, 891 F.3d 839, 844 (9th Cir. 2018). To determine whether there is a "substantial continuity of the business," courts consider the "totality of the circumstances." *ManWeb II*, 884 F.3d at 776. Notice in this context can be shown by "pointing to the facts that conclusively demonstrate actual knowledge," or by "presenting evidence that allows the fact finder to imply knowledge from the circumstances." *Tsareff v. ManWeb Services, Inc.* ("*ManWeb I*"), 794 F.3d 841, 847 (7th Cir. 2015).

Applying this test, the Court finds that the Trustees are likely to succeed on the merits of their claim to recover withdrawal liability pending arbitration from Laborforce LLC. First, the Trustees have presented credible evidence indicating that Laborforce LLC substantially assumed the assets of the M&K Employees Defendants and substantially continued the M&K Employees Defendants' business. *See Workman*, 275 F. Supp. 3d at 267. As Laborforce LLC itself represented in a pleading filed in a separate lawsuit between it and the Union, "[p]rior to February 2, 2019, [M&K Employees Solutions] . . . leased employees to truck dealerships in the Chicago area pursuant to a collective bargaining agreement with [the Union]." ECF No. 62-18 at 9. But effective February 3, 2019, Laborforce "became the new labor leasing company that provided employees to the *same truck dealerships* formerly serviced by [M&K Employees Solutions]." *Id.* (emphasis added). As part of this transition, Laborforce LLC re-hired M&K Employees Solutions' former employees, took over the labor-leasing agreement, and assumed the obligations arising from a grievance filed by the Union against M&K Employees Solutions. *Id.* at 8, 10. Though these representations do not mention M&K Employees Alsip directly, M&K Employees Alsip is one of the five Series LLCs created under M&K Employees Solutions. *See* ECF No. 62-14 at 2.

Further indicating that Laborforce LLC substantially continued the M&K Employees Defendants' business is the fact that Laborforce LLC's collective-bargaining agreement with the Union covered the same types of employees and provided the same terms and conditions of employment as the collective-bargaining agreement between M&K Employees Summit (one of the Series LLCs formed under M&K Employees Solutions) and the Union. *Compare* ECF No. 62-4 at 4–5, 6–9, *with* ECF No. 62-5 at 6–7, 8–11; *see* ECF No. 62-14 at 2–6. Considering the totality of the circumstances, this evidence indicates that the Trustees are likely to show that Laborforce LLC "substantially assum[ed]" the M&K Employees Defendants' assets (i.e., their employees) and continued the M&K Employees Defendants' operations "without interruption or substantial change." *ManWeb II*, 884 F.3d at 776 (quoting *Upholsterers' Intern. Union Pension Fund*, 920 F.2d at 1326).

The Trustees have also presented evidence sufficient to show that Laborforce LLC knew of M&K Employees Alsip's withdrawal liability at the time it took over the M&K Employees Defendants' business. Tellingly, the Laborforce LLC representative who signed the collective-bargaining agreement with the Union in February 2019 (Rainelle Jansma) was the *same person* who signed the nearly identical collective-bargaining agreement with the Union on behalf of M&K Employees Summit back in 2014. *See* ECF Nos. 62-4 at 33 & 62-5 at 36. So in February 2019, when Laborforce LLC re-hired the M&K Employees Solutions employees, *see* ECF No. 62-18 at 8, 10, and entered into a substantially similar collective-bargaining agreement with the Union, *see* ECF No. 62-4 at 4–5, 6–9; ECF No. 62-5 at 6–7, 8–11, Ms. Jansma should have been well aware that any one of the M&K Employees Defendants would owe withdrawal liability should they withdraw from the Fund. *See ManWeb I*, 794 F.3d at 847 (holding that notice in this context may

be shown by "presenting evidence that allows the fact finder to imply knowledge from the circumstances").

In sum, because the Trustees have put forth evidence indicating that Laborforce LLC will likely be held liable for M&K Employees Alsip's withdrawal liability as its successor, the Trustees have shown a likelihood of success on the merits of their claim for the payment of withdrawal liability pending arbitration from Laborforce LLC.

### ii.  Irreparable Harm

The Trustees have also carried their burden of showing a likelihood of irreparable harm in the absence of preliminary relief. Generally speaking, the failure to pay a sum of money pending a resolution on the merits does not cause irreparable harm. *Wisc. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("It is . . . well settled that economic loss does not, in and of itself, constitute irreparable harm[.]"); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury[.]"). An employer's failure to pay withdrawal liability, however, is a rare exception to that rule. *See Galgay*, 105 F.3d at 129 (holding that multiemployer pension plans will be irreparably harmed "unless employers are enjoined to make interim payments while litigation proceeds"); *cf. IAM Nat. Pension Fund Ben. Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 25 (D.C. Cir. 1986) (holding that an order refusing to require interim withdrawal liability payments is appealable because "irreparable harm" will result).

A brief discussion of the MPPAA shows why this is so. Congress amended the Employee Retirement Income Security Program Act ("ERISA") with the Multiemployer Pension Plan Amendments Act "out of concern that multiemployer pension plans would collapse as employers withdrew if the remaining contributors became too few in numbers to pay the unfunded vested

benefits." *Galgay*, 105 F.3d at 139 (citing H.R. Rep. No. 869, Pt. II, 96th Cong., 2d Sess. 10–11 (1980)); *Findlay Truck Line v. Cent. States, Se. & Sw. Areas Pension Fund*, 726 F.3d 738, 741–42 (6th Cir. 2013). Indeed, before the MPPAA was passed,

> [a] key problem of ongoing multiemployer plans, especially in declining industries, [was] the problem of employer withdrawal. Employer withdrawals reduce a plan's contribution base. This pushes the contribution rate for remaining employers to higher and higher levels. . . . The rising costs may encourage—or force—withdrawals, thereby increasing the inherited liabilities to be funded by an ever decreasing contribution base. This vicious downward spiral may continue until it is no longer reasonable or possible for the pension plan to continue.

*Findlay Truck Line*, 726 F.3d at 741.

To alleviate this concern, the MPPAA requires employers who withdraw from a multiemployer pension plan to pay their allocated portion of the Fund's unfunded, vested benefits. 29 U.S.C. §§ 1381(b)(1), 1399(c)(2). This payment is referred to as "withdrawal liability." *See id.* at § 1381. And to protect multiemployer pension plans from collapsing when an employer withdraws, Congress decided that when an employer disputes the amount of withdrawal liability assessed, it must continue paying withdrawal liability *pending resolution of that dispute. See* 29 U.S.C. § 1399(c)(2); *id.* at § 1401(d). Whether that dispute is resolved with the pension plan's internal review, *see id.* § 1399(b)(2)(A)(i), or through arbitration, *see id.* § 1401, this "pay now, dispute later" regime mitigates the risk that a multiemployer pension plan will collapse when an employer withdraws and contests the amount of withdrawal liability assessed. *Galgay*, 105 F.3d at 139; *Findlay Truck Line*, 726 F.3d at 742. The "pay now, dispute later" rule also helps to avoid the situation where, during the course of arbitration, an employer becomes become insolvent and is unable to pay in the event of a favorable award. *Findlay Truck Line*, 726 F.3d at 742.

In requiring employers to pay withdrawal liability even while they dispute the amount assessed, Congress recognized that allowing employers to pay withdrawal liability *after* arbitration would be futile. *See Galgay*, 105 F.3d at 140 ("By enacting the withdrawal liability provisions, Congress has concluded that the uninterrupted flow of payments is important in itself, and that the ultimate recovery of payments will not suffice to make [a multiemployer pension plan] whole."). Viewed against this backdrop, the Court finds that the Trustees have shown a likelihood of irreparable harm absent preliminary relief. As Congress recognized in passing the MPPAA, any harm caused to the Fund during the pendency of arbitration cannot be mitigated by permitting the M&K Employees Defendants and Laborforce LLC to pay the approximately $6 million assessed in withdrawal liability once arbitration has concluded. ECF No. 62-7 at 2. The Court thus finds that this factor weighs in favor of granting preliminary relief.

   iii. The Balance of the Equities

   Next, the Court finds that the balance of equities weighs in favor of the Trustees. On one hand, if the Court allows the M&K Employees Defendants and Laborforce LLC to withhold payment during the pendency of arbitration, the Fund runs the risk of collapsing or being unable to pay out vested benefits. Denying the Trustees' motion for preliminary injunctive relief thus could cause the Fund irreparable harm. On the other hand, granting the Trustees' motion would cause very little harm to the M&K Employees Defendants and Laborforce LLC. If the arbitrator determines that the Fund erred in assessing withdrawal liability, the Fund must reimburse the defendants for any overpayment. 29 U.S.C. § 1401(d); *see* 29 C.F.R. § 4219.31(d) ("If the plan sponsor or an arbitrator determines that payments made in accordance with the schedule of payments established by the plan sponsor have resulted in an overpayment of withdrawal liability, *the plan sponsor shall refund the overpayment, with interest, in a lump sum*.") (emphasis added).

As the D.C. Circuit has recognized, this safeguard built into the MPPAA ensures that employers will not be irreparably harmed by making interim withdrawal liability payments, even if the amount assessed is eventually reduced in arbitration. *See IAM Nat. Pension Fund Benefit Plan A*, 789 F.2d at 25. To be sure, the M&K Employees Defendants and Laborforce LLC could temporarily lose approximately $6 million, which is a considerable sum of money. But given that any overpayment will be reimbursed (with interest), this potential for harm is minor compared to the risk faced by the Fund. Accordingly, the Court finds that the balance of the equites weighs in the Trustees' favor.

iv. <u>Public Interest</u>

Finally, the Court finds that the public interest also weighs in favor of the Trustees. The public has a strong interest in preventing multiemployer pension funds from collapsing or being unable to pay out vested benefits. Indeed, this was the very reason Congress passed the MPPAA. *See Findlay Truck Line, Inc.*, 726 F.3d at 741. By requiring employers that withdraw from a multiemployer pension fund to pay withdrawal liability pending arbitration, Congress recognized the need to ensure that these plans have sufficient funds to pay vested benefits to plan beneficiaries. *See* 29 U.S.C. § 1399(c)(2). The public interest thus tilts in favor of preliminary injunctive relief.

In sum, because the Trustees have shown a likelihood of success on their claim to recover withdrawal liability, a substantial likelihood of irreparable harm absent relief, that the equities tip in their favor, and that a preliminary injunction is in the public interest, the Court will grant the Trustees' preliminary-injunction motion.

**B. The Court Will Not Preliminarily Enjoin the M&K Employees Defendants or Laborforce LLC to Pay Liquidated Damages or Interest on the Amount of Withdrawal Liability Assessed to M&K Employees Alsip**

In addition to seeking the immediate payment of the full amount of withdrawal liability assessed, the Trustees also seek payment of liquidated damages and interest. ECF No. 62-1 at 20. Perhaps assuming that their request for liquidated damages and interest is an inseparable part of their request for withdrawal liability, the Trustees do not put forth any arguments as to why they will be likely to suffer irreparable harm absent the payment of liquidated damages and interest, or that the immediate payment of these sums is equitable and in the public interest. *See id.* at 20–21. These three forms of relief, however, are awarded under different circumstances and serve different purposes. Accordingly, the Court must evaluate the Trustees' request for liquidated damages and interest separately.

i.   Likelihood of Success on the Merits

In support of their argument that the "Fund is entitled to immediate payment of interest and liquidated damages on the accelerated amount" of withdrawal liability, the Trustees cite three related provisions of ERISA: 29 U.S.C. §§ 1132(g)(2), 1145, and 1451(b). ECF No. 62-1 at 20. Section 1451(b) provides that "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. § 1451(b). Section 1145, in turn, titled "Delinquent contributions," obligates employers to make contributions to a multiemployer plan "in accordance with the terms and conditions" of the plan or a collectively bargained agreement. *Id.* at § 1145. Finally, section 1132(g)(2) sets forth the remedies that "shall" be awarded in an

action to recover delinquent contributions. *See* 29 U.S.C. § 1132(g)(2). That provision reads in

relevant part:

> **(g) ATTORNEY'S FEES AND COSTS; AWARDS IN ACTIONS INVOLVING DELINQUENT CONTRIBUTIONS**
>
> . . .
>
>> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —
>>
>>> (A) the unpaid contributions,
>>>
>>> (B) interest on the unpaid contributions,
>>>
>>> (C) an amount equal to the greater of —
>>>
>>>> (i) interest on the unpaid contributions, or
>>>>
>>>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>>>
>>> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>>>
>>> (E) such other legal or equitable relief as the court deems appropriate.

*Id.* at § 1132(g)(2).

Citing § 1451(b)—which provides that actions to compel an employer to pay withdrawal

liability "shall be treated in the same manner" as actions to compel delinquent contributions—this

Court has awarded liquidated damages and interest pursuant to § 1132(g)(2) in actions seeking to

recover withdrawal liability. *See, e.g.*, *Trustees of United Mine Workers of America 1974 Pension

Plan v. Morrison Knudsen Corp.*, 931 F. Supp. 4, 9 (D.D.C. 1996); *IAM Nat. Pension Fund Plan

A v. Pabst Brewing Co.*, 711 F. Supp. 636, 638 (D.D.C. 1988); *Brady-Cline Coal Co.*, 668 F. Supp.

at 10; *Combs v. Adkins & Adkins Coal Co., Inc.*, 597 F. Supp. 122, 127–28 (D.D.C. 1984). The

Trustees thus very well may succeed on the merits of their request for liquidated damages and

interest as part of their claim to recover withdrawal liability pursuant to 29 U.S.C. § 1451.

ii.   Irreparable Harm

The Trustees have not, however, shown that they are likely to suffer irreparable harm absent the immediate payment of liquidated damages and interest. Though an employer's failure to pay withdrawal liability pending arbitration can cause irreparable harm to a multiemployer pension fund, *see Galgay*, 105 F.3d at 139, the same cannot be said for an employer's failure to pay liquidated damages or interest during this time. As explained above, withdrawal liability represents the employer's allocated share of the pension plan's unfunded, vested benefits (as assessed by the fund). 29 U.S.C. § 1381(b)(1). Without payment of this sum, the plan could collapse. *See Galgay*, 105 F.3d at 139; *Findlay Truck Line*, 726 F.3d at 741. Liquidated damages and interest, however, exceed that amount of interim payment necessary to keep the plan afloat. Because of this, requiring a multiemployer pension plan to wait until a final judgment has been entered to recoup liquidated damages and interest will not cause it irreparable harm. Indeed, Congress recognized this much when it passed the MPPAA. While employers must pay withdrawal liability pending arbitration, *see* 29 U.S.C. §§ 1399(c)(2) & 1401(d), the remedies listed in § 1132(g)(2)—including liquidated damages and interest—may not be awarded until a "*judgment in favor of the plan is awarded.*" 29 U.S.C. § 1132(g)(2) (emphasis added). For these reasons, the Trustees have failed to meet their burden of showing that they are likely to suffer irreparable harm absent the immediate payment of liquidated damages and interest.

iii.   Balance of the Equities

Nor have the Trustees shown that the balance of the equities tips in their favor. While delaying the payment of withdrawal liability until after arbitration can cause a multiemployer pension plan to fail, delaying the payment of liquidated damages and interest cannot. Thus, requiring the Fund to wait until the parties have resolved their dispute over the amount of

withdrawal liability assessed will not cause the Fund irreparable harm. And unlike the safeguards in place for the overpayment of *withdrawal liability*, no such safeguards exist for the improper payment of *liquidated damages and interest*. *See* 29 U.S.C. § 1401(d); 29 C.F.R. § 4219.31(d). That is so because, again, liquidated damages and interest may only be awarded once a "judgment in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2). Accordingly, because the Trustees will not suffer irreparable harm from delaying payment of any liquidated damages and interest ultimately owed, and because the M&K Employees Defendants and Laborforce LLC's payment of liquidated damages and interest may ultimately be judged improper, the Court finds that the balance of the equities does not support preliminary injunctive relief.

 iv. <u>Public Interest</u>

 Finally, the Trustees have not shown that ordering the immediate payment of liquidated damages and interest is in the public interest. While the public has a strong interest in maintaining solvent multiemployer pension plans, it has no interest in ensuring that multiemployer pension plans are awarded liquidated damages and interest prior to a final judgment regarding the amount of withdrawal liability owed. To the contrary, the public has an interest in ensuring that employers are *not* forced to prematurely pay these sums. Requiring employers to do so could cause them to permanently lose money, which could force them to cut wages or fire employees to make up for those lost funds. In sum, because the Trustees have not satisfied any of the four factors required for preliminary injunctive relief, the Court will deny their request for the immediate payment of liquidated damages and interest. *See* ECF No. 62-1 at 20–21.

 Furthermore, in light of this ruling, the Court will sua sponte vacate a portion of its March 19, 2020 Order granting the Trustees' first preliminary-injunction motion. *See* ECF No. 22. In its March 19, 2020 Order, the Court preliminarily enjoined the M&K Employees Defendants to pay

the sum of the first two defaulted quarterly payments, plus "liquidated damages, interest, attorneys' fees, and costs, in an amount to be determined." ECF No. 22 at 2. The Trustees never sought enforcement of this provision, nor did they calculate the amount of liquidated damages, interests, attorneys' fees, or costs allegedly owed. Nevertheless, for the reasons set forth in this Memorandum Opinion, the Court will vacate its March 19, 2020 Order, ECF No. 22, to the extent it permitted the Trustees to recover liquidated damages, interest, attorney's fees, and costs prior to a final judgment. *See* Fed. R. Civ. P. 54(b); *see also Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984) ("A trial court's power to modify, like the power over all its orders, is inherent . . . When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place."). All other portions of that Order will stand.

### C. The Court Will Deny the M&K Employees Defendants' Motion for a Scheduling Conference or, Alternatively, to Enlarge the Briefing Dates on the Trustees' Motion

Rather than opposing the Trustees' preliminary-injunction motion on the merits, the M&K Employees Defendants moved for a scheduling conference or, alternatively, to enlarge the briefing dates. ECF No. 63. The Trustees opposed the motion, ECF No. 64, and the M&K Employees Defendants replied, ECF No. 65. Laborforce LLC then moved to join the M&K Employees Defendants' motion. *See* ECF No. 68. Because the Trustees' motion seeks to preliminarily enjoin both the M&K Employees Defendants and Laborforce LLC, *see* ECF No. 62-1 at 5–6, the Court will grant Laborforce LLC's request to join the M&K Employees Defendants' motion, ECF No. 63.

The M&K Employees Defendants make three arguments in support of their motion for a scheduling conference or, alternatively, for an enlargement of the briefing schedule on the Trustees' motion. *See* ECF No. 63. None is persuasive. *First*, the M&K Employees Defendants

ask for a scheduling conference because they say the Trustees recently appealed two "adverse arbitration awards to this Court," both of which directly implicate issues in this case and will require motions to consolidate the appeals with this action, or motions to stay the action. *Id.* at 2.[6] Though these arbitration awards could be relevant to the *dispute over the amount of withdrawal liability assessed by the Fund to M&K Employees Alsip*, they have no bearing on the issue presently before the Court, which is whether the M&K Employees Defendants and Laborforce LLC should be *preliminarily enjoined to pay the assessed withdrawal liability while arbitration is pending*. As explained above, the MPPAA created a "pay now, dispute later" regime to ensure that multiemployer pension plans would not dissolve when a withdrawn employer refuses to pay withdrawal liability until the arbitrator issues a final award. *Findlay Truck Line, Inc.*, 726 F.3d at 742. So the only arbitration award relevant to the present inquiry is the arbitration *between the Trustees and M&K Employees Solutions*, which is still pending. ECF No. 62-2 at ¶ 12; *see* ECF No. 62-9 at 2. Until the arbitrator enters *that* final award, the M&K Employees Defendants cannot escape their obligation under the MPPAA to pay withdrawal liability to the Fund. *See* 29 U.S.C. §§ 1399(c)(2) & 1401(d).

*Second*, the M&K Employees Defendants claim that the Trustees have not actually "moved for anything," as the Trustees' motion says that they "will move this Court, at a date and time to be set by the Court, for an Order to Show Cause for Entry of a Preliminary Injunction to be entered against Defendants." *Id.* at 4 (citing ECF No. 62 at 1). Because of this "confusing" language, the M&K Employees Defendants say, they "are uncertain about the procedure to be followed or the timing by which they must respond." *Id.* at 4.

---

[6] Those matters are *Trustees of the IAM National Pension Fund v. Ohio Magnetics, Inc.*, Case No. 21-cv-928-RDM and *Trustees of the IAM National Pension Fund v. Toyota Logistics Services, Inc.*, Case No. 21-cv-931-JDB, both of which were filed on April 6, 2021. *See* ECF No. 63 at 4.

To be sure, it is clear from the Trustees' oddly captioned preliminary-injunction motion that they are unfamiliar with the Court's Local Rules governing applications for preliminary injunctions. *See* ECF No. 62. This neglect, however, does not excuse the M&K Employees Defendants from timely responding under the Local Rules. *See* LCvR 65.1(c). Though the Trustees captioned their motion as a "notice of motion for an order to show cause for entry of a preliminary injunction," ECF No. 62, that filing is, unmistakably, an application for a preliminary injunction. Indeed, in support of their motion, the Trustees submitted a 22-page memorandum, which argues that the Court should preliminarily enjoin defendants because the Trustees have made the requisite showing on each of the four preliminary-injunction requirements. *See* ECF No. 62-1. In support, the Trustees include eighteen exhibits and two declarations. *See* ECF Nos. 62-2–62-21. And they conclude with the following: "For the reasons set forth above, the Trustees respectfully request that the Court enter an order preliminarily enjoining the M&K Employees Defendants and Laborforce to pay the Fund $7,790,188.20[.]" *Id.* at 22. Given the substance of the Trustees' request, the M&K Employees Defendants can hardly argue that they were so confused by the caption of the motion that they could not have been expected to timely respond within seven days, as required by the Local Rules. *See* LCvR 65.1(c).

*Third*, the M&K Employees Defendants argue in the alternative that their time to respond to the Trustees' preliminary-injunction motion should be extended until after Laborforce LLC has had an opportunity to answer the Trustees' Third Amended Complaint. ECF No. 63 at 5; ECF No. 65 at 2. Unsurprisingly, the M&K Employees Defendants cite no authority for this request, as it is very common to expect a defendant to respond to a preliminary-injunction motion before all parties have answered the complaint. Because the Court's Local Rules require the opposition to a preliminary-injunction motion to be filed no later than seven days after the filing of the

preliminary-injunction motion, a defendant must respond to the preliminary-injunction motion before answering the Complaint any time a plaintiff simultaneously files her complaint and a preliminary-injunction motion. *Compare* LCvR 65.1(c), *with* Fed. R. Civ. P. 12(a)(1). The Court is thus unsympathetic to the M&K Employees Defendants' request that the Court extend their deadline to oppose the Trustees' preliminary-injunction motion so they can wait for Laborforce LLC to answer the Third Amended Complaint.

In sum, because the M&K Employees Defendants' motion, ECF No. 63, gives the Court no good reason to deviate from the Court's ordinary practices governing preliminary injunction applications, *see* LCvR 65.1(c), the Court will deny it.

### IV. CONCLUSION

For the reasons explained above, the Court will **GRANT IN PART** and **DENY IN PART** the Trustees' motion for a preliminary injunction. ECF No. 62. The Court will preliminarily enjoin the M&K Employees Defendants and Laborforce LLC to pay the full amount of withdrawal liability assessed by the Fund to M&K Employees Alsip. It will not, however, preliminarily enjoin the M&K Employees Defendants and Laborforce LLC to pay liquidated damages and interest on that amount. Furthermore, the Court will **GRANT** Laborforce LLC's motion, ECF No. 68, to join the M&K Employees Defendants' motion for a scheduling conference or, alternatively, to enlarge the briefing dates, ECF No. 63, but it will **DENY** the M&K Employees Defendants' motion, ECF No. 63. Finally, the Court will **VACATE** its March 19, 2020 Order to the extent the Court preliminarily enjoined the M&K Employees Defendants to pay "liquidated damages, interest, attorneys' fees, and costs, in an amount to be determined." ECF No. 22 at 1. All other portions of the March 19, 2020 Order will stand.

An Order consistent with this Memorandum Opinion shall follow.

Date: April 20, 2021

Hon. Royce C. Lamberth
United States District Judge