# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**TRUSTEES OF THE IAM NATIONAL PENSION FUND**,

    *Plaintiffs,*

**v.**

**M & K EMPLOYEE SOLUTIONS, LLC**, *et al.*,

    *Defendants.*

Case No. 1:20-cv-433 (RCL)

## <u>MEMORANDUM OPINION</u>

This Court has twice now preliminarily enjoined certain defendants in this case—M & K Employee Solutions, LLC; M & K Employee Solutions, LLC-Alsip; M & K Employee Solutions, LLC-Illinois Leasing; M & K Employee Solutions, LLC-Joliet; M & K Employee Solutions, LLC-Northern Illinois; M & K Employee Solutions, LLC-Summit (collectively the "Employees Entities"), and Laborforce LLC[1]—to pay the Trustees of the IAM National Pension Fund ("the Trustees") the withdrawal liability assessed by the Fund. ECF Nos. 22 & 70. Both times, defendants declined to do so, paying withdrawal liability to the Fund only after an arbitrator adjusted the withdrawal liability amount assessed. Now, defendants jointly move for summary judgment on all but one claim, arguing that they have paid the Fund the newly recalculated withdrawal liability and there is nothing more for this Court to do. Defs.' Mot. for Summ. J., ECF No. 100. The Court disagrees. Defendants flagrantly violated the well-established "pay now,

---

[1] Laborforce was added to the complaint after the March 2020 Injunction and thus was only subject to the second preliminary injunction.

dispute later" rule, as well as this Court's explicit orders. They cannot moot this violation after the fact. The Trustees may be entitled by statute to liquidated damages, attorneys' fees, and costs.

Because this Court will **DENY** defendants' motion for partial summary judgment, it will address a number of other pending motions. Defendant Laborforce moves to dismiss the claims against them, alleging that the Trustees failed to properly allege successor liability in their Third Amended Complaint. ECF No. 71. The Court will **DENY** its motion. The Court will further **GRANT** the Trustees' motion to amend their complaint. ECF No. 91. The Court will **DENY** defendants' motion for a protective order, ECF No. 89, and **GRANT** the Trustees' motion to compel, ECF No. 90. Finally, the Trustees move for contempt of court. ECF Nos. 77 & 78. The Court will **DENY** their motions for civil contempt.

## I.      BACKGROUND

### A.  ERISA, Withdrawal Liability, And "Pay Now, Dispute Later"

Congress enacted the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), codified at 29 U.S.C. §§ 1381–1461, to "protect the financial solvency of multiemployer pension plans." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 196 (1997).  The MPPAA, which amended the Employee Retirement Income Security Act ("ERISA"), commands employers who withdraw from underfunded multiemployer pension plans to pay "withdrawal liability." *Id.* at 195. "Withdrawal liability" is comprised of an employer's share of a multiemployer pension plan's unfunded, unvested benefits. 29 U.S.C. § 1381(b)(1).

The MPPAA calls upon a plan's trustees, not the employer, to propose the amount of withdrawal liability and orders the trustees to set a payment schedule. *Bay Area Laundry*, 522 U.S. at 197 (citing 29 U.S.C. § 1399(b)(1)). Of course, an employer is not completely bound

by the amount of withdrawal liability assessed by a plan's trustees. It may timely initiate a dispute-resolution procedure, first by requesting review from the trustees and later by pursuing arbitration. *See* 29 U.S.C. §§ 1399(b)(2), 1401(a)(1). Importantly, however, initiating a dispute of the amount of withdrawal liability or the payment plan *does not relieve the employer of the duty to pay*. "Even if the employer challenges the trustees' withdrawal liability determination . . . *it must still pay* according to the trustees' schedule in the interim." *Bay Area Laundry*, 522 U.S. at 197 (emphasis added). This statutory requirement is colloquially referred to as the "pay now, dispute later" rule:

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand *notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.*

29 U.S.C. § 1399(c)(2) (emphasis added); *see also Bay Area Laundry*, 522 U.S. at 197.

The "pay now, dispute later" rule is crucial to the survival of multiemployer pension funds. It "mitigates the risk that a multiemployer plan will collapse when an employer withdraws and contests the amount of withdrawal liability assessed." *Trs. of IAM Nat'l Pension Fund v. M & K Emp. Sols., LLC*, No. 20-cv-433 (RCL), 2021 WL 1546947, at *8 (D.D.C. Apr. 20, 2021), ECF 69. Congress knew that without such a rule, the "purpose of MPPAA would be undermined" because "employers could postpone their debts to pension funds by engaging in protracted litigation over withdrawal liability." *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 139 (3d Cir. 1997). The rule also alleviates the risk that "during the course of arbitration, an employer will become insolvent, and the fund will not be able to collect in the event of a favorable award." *Findlay Truck Line, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 726 F.3d 738, 742 (6th Cir. 2013).

To further emphasize the importance of the "pay now, dispute later" rule, Congress authorized multiple remedies for a plan when an employer violates the rule. A plan may "invoke

a statutory acceleration provision" to demand all the unpaid withdrawal liability at once; it may

sue to collect the withdrawal liability; and it may seek liquidated damages, attorneys' fees, and

other costs. *Bay Area Laundry*, 522 U.S. at 197; *see* 29 U.S.C. §§ 1399(c)(5), 1451(a)(1), (b), (e).

Liquidated damages are something an employer "must pay as a penalty for refusing to follow the

statutory procedure for challenging assessments of withdrawal liability." *Cent. States, Se. & Sw.*

*Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1347 (7th Cir. 1992). "Liability

for liquidated damages is separate from the underlying withdrawal liability itself." *Id.*

### B.  Factual History

The background of this case has been laid out in a previous memorandum opinion, *Trustees*

*of IAM Nat'l Pension Fund*, 2021 WL 1546947 (D.D.C. April 20, 2021), ECF No. 69, but the

Court will reiterate the salient facts here. M & K Truck was founded in Michigan as a network of

commercial vehicle dealerships and service centers. *Id*. at *1. In mid-2012, M & K Truck assumed

the operation of three existing dealerships in and around Chicago, Illinois. *Id*. The deal structured

those transactions so that one group of LLCs ("the Sales Entities") purchased the dealerships'

assets and another group of LLCs ("the Employees Entities") re-hired the dealership' employees.

*Id*. The Employees Entities would then lease the rehired employees to the Sales Entities. *Id*.

The Employees Entities include M & K Employee Solutions, LLC and five Series LLCs

created under it: M & K Employee Solutions, LLC-Alsip ("M & K Employees Alsip"); M & K

Employee Solutions, LLC-Illinois Leasing ("M & K Employees Illinois Leasing"); M & K

Employee Solutions, LLC-Joliet ("M & K Employees Joliet"); M & K Employee Solutions, LLC-

Northern Illinois ("M & K Employees Northern Illinois"); and M & K Employee Solutions, LLC-

Summit ("M & K Employees Summit"). *Id*. Rainelle Jansma was the sole member and manager

of each of these LLCs when they were established. *Id*.

M & K Employees Alsip, M & K Employees Joliet, and M & K Employees Summit entered into collective-bargaining agreements with Automobile Mechanics' Local 701, International Association of Machinists and Aerospace Workers, AFL-CIO ("the Union"). *Id*. at *2. These agreements required M & K Employees Alsip, M & K Employees Joliet, and M & K Employees Summit to pay contributions into the IAM National Pension Fund ("the Fund"), a multiemployer pension plan managed in Washington, D.C. *Id*.

By December 31, 2018, M & K Employees Alsip, M & K Employees Joliet, and M & K Employees Summit ceased covered operations and thus effectuated a "complete withdrawal" from the Fund. *Id*. This complete withdrawal triggered a statutory obligation to pay withdrawal liability pursuant to the MPPAA. *Id*.; *see* 29 U.S.C. § 1381(a).

In late 2018, Jansma created another company: Laborforce. Third Am. Compl. ¶¶ 8, 45, ECF No. 56. Laborforce hired all the employees of M & K Employees Alsip and M & K Employees Summit. *Id.*  ¶ 8. Laborforce then leased these employees to the corresponding Sales Entities, just as M & K Employees Alsip and M & K Employees Summit had done before. *Id.* ¶¶ 8, 45. In early 2019, Laborforce entered into a new collective bargaining agreement with the Union— one that no longer required it to contribute to the Fund. *Id.*

After the Employees Entities' complete withdrawal from the Fund and following the procedures set forth in the MPPAA, the Trustees notified M & K Employees Alsip that its withdrawal liability had been calculated at $6,158,482. *Trustees of IAM Nat'l Pension Fund*, 2021 WL 1546947, at *4. The Trustees also set a payment schedule of twenty installments, with the first payment due by August 13, 2019. *Id.* But M & K Employees Alsip did not make the required payment on August 13, 2019—instead, it initiated arbitration to contest the amount of withdrawal liability on November 20, 2019. *Id.*

### C. Procedural History

In February 2020, after multiple missed payments, the Trustees (as fiduciaries of the Fund) initiated this lawsuit against M & K Employees Alsip to recover the assessed withdrawal liability. Compl., ECF No. 1. Their complaint also named M & K Employee Solutions, M & K Employees Illinois Leasing, M & K Employees Joliet, M & K Employees Northern Illinois, and M & K Employees Summit as "trade[s] or business[es] under common control" with M & K Employees Alsip when it withdrew from the Fund. *Id.* ¶ 27–31. Along with their first complaint, the Trustees moved for a preliminary injunction. ECF No. 2. The injunction asked for the immediate payment of $705,442, which was the sum of the first two unpaid withdrawal-liability payments, plus "liquidated damages, interest, attorneys' fees, and costs, in an amount to be determined." ECF No. 2-1 at 8. Defendants did not oppose, and the Court granted the first preliminary injunction. ECF No. 22 (the "March 2020 Injunction").

Despite this Court's order, M & K Employees Alsip made no interim payments. Accordingly, in September 2020, the Fund exercised its authority under the MPPAA to accelerate the withdrawal liability assessed to M & K Employees Alsip. ECF No. 62-1 at 8–9; *see* 29 U.S.C. § 1399(c)(5).  In other words, the Fund ordered M & K Employees Alsip to pay its $6,158,482 liability all at once, as opposed to in interim payments.

In October 2020, the Trustees filed a Second Amended Complaint which added the Sales Entities as defendants: M & K Quality Truck Sales of Alsip, LLC ("M & K Sales Alsip"); M & K Quality Truck Sales of Joliet, LLC ("M & K Sales Joliet"); M & K Quality Truck Sales of Northern Illinois, LLC ("M & K Sales Northern Illinois");  and M & K Quality Truck Sales of Summit, LLC ("M & K Sales Summit"). The Trustees alleged that each M & K Sales LLC was either a single employer, joint employers, or an alter-ego for the corresponding M & K Employees LLC,

constructed to insulate the former from the "rights and obligations of the latter under their collective bargaining agreements with various local unions." Second Am. Compl. ¶ 4, ECF No. 45. In March 2021, the Trustees filed a Third Amended Complaint, which added defendant Laborforce as M & K Employees' alleged successor. Third Am. Compl. ¶¶ 77–81, ECF No. 56.

Defendants did not pay the accelerated withdrawal liability or any interim payments, and so the Trustees moved for a second preliminary injunction. ECF No. 62. The second injunction, entered a year after the first, ordered defendants—including Laborforce as successor—to pay the full $6,158,482 of withdrawal liability assessed by the Trustees. ECF No. 70 ("the April 2021 Injunction"). After that injunction, defendants made two small payments to the Fund—$1,000 on April 27, 2021, and $10,487 on May 20, 2021. Pls.' Statement of Material Facts ¶ 33, ECF No. 101-2. But defendants refused to immediately pay the full amount of the withdrawal liability due, as ordered. Instead, defendants appealed the preliminary injunction to the D.C. Circuit. ECF No. 85. During the same period, Laborforce separately moved to dismiss for failure to state a claim. Laborforce's Mot. to Dismiss, ECF No. 71.

The concurrent arbitration that M & K Employees Alsip initiated came to a head on July 13, 2021, when an arbitrator determined that the Fund had erred in its assessment and ordered the Fund to recalculate the proper amount of withdrawal liability. Defs.' Statement of Material Facts ¶ 6, ECF No. 100-2. The Fund recalculated the withdrawal liability assessment to the amount of $1,797,781. Pls.' Statement of Material Facts. ¶ 8. On August 16, 2021, over two years after it received notification from the Trustees regarding withdrawal liability, the Employees Entities made their first substantial payment towards their withdrawal liability by wiring the Fund $1,786,294. *Id.* ¶ 9. When combined with small payments the Employees Entities had made in the

past, this payment meant the defendants had now paid the amount of the recalculated principal withdrawal liability in full. *Id.*

After the arbitrator's determination, both parties filed a flurry of motions. But each of these motions involve the same core issue: whether, as defendants repeatedly allege, the arbitrator's determination has "mooted" this case. Defendants jointly moved for a protective order to prevent certain depositions and quash subpoenas, arguing that since the arbitrator "annulled" the withdrawal liability assessment, the basis for any interim payment ended. Defs.' Mot. for Protective Ord. 2, ECF No. 89. The Trustees, on the other hand, moved to compel depositions of certain defendants who cancelled previously scheduled depositions after the arbitrator's decision. Pls.' Mot. to Compel Depositions, ECF No. 90. The Trustees also filed a motion for leave to file a Fourth Amended Complaint to add M & K Employees Services as a defendant. Pls.' Mot. for Leave to File Compl, ECF No. 91. Defendants opposed, arguing that amendments to the complaint are "futile." ECF No. 98. Defendants moved, with plaintiffs' consent, to vacate both preliminary injunctions. ECF No. 105. Finally, defendants moved for partial summary judgment, where they delineated the arguments that undergird all of their outstanding motions: that the Trustees' claims for both withdrawal liability and liquidated damages are moot. *See* Defs.' Mot. for Summ. J. The Trustees replied, Pls.' Opp'n, ECF No. 101, and defendants responded, Defs.' Resp., ECF No. 102. All these motions are now ripe.

The Court could not act on any of these motions until defendants' appeal of the April 2021 Injunction to the Circuit was completed. Accordingly, the parties jointly moved the Circuit to remand so that this Court could vacate the preliminary injunctions. Mot. to Remand, *Trs. of the IAM Nat'l Pension Fund v. M & K Emp. Sols., LLC*, Case No. 21-7072 (D.C. Cir. Nov. 3, 2021). The Circuit remanded to allow this Court to vacate the preliminary injunctions, and then dismissed

the appeal as moot. Order, *Trs. of the IAM Nat'l Pension Fund*, Case No. 21-7072 (D.C. Cir. Dec. 23, 2021); Order, *Trs. of the IAM Nat'l Pension Fund*, Case No. 21-7072 (D.C. Cir. Jan. 11, 2022).

The Court granted defendants' motion to vacate the preliminary injunctions once the case was remanded for further proceedings. ECF No. 110. Accordingly, this Court now has jurisdiction to move forward with the ripe motions in this case: (1) Laborforce's motion to dismiss, Laborforce's Mot. to Dismiss; (2) defendants' joint motion for partial summary judgment, Defs.' Mot. for Summ. J.; (3) the Trustees' motion to amend the complaint, Pls.' Mot. for Leave to File Compl; (4) defendants' motion for a protective order, Defs.' Mot. For Protective Ord.; (5) the Trustees' motion to compel, Pls.' Mot. to Compel; and (6) the Trustees' two motions for contempt, ECF Nos. 78 & 79.

## II. LEGAL STANDARDS

### A.  Motion to Dismiss for Failure to State a Claim

A complaint must contain sufficient factual matter that, if accepted as true, states "a claim to relief that is plausible on its face" to survive a motion to dismiss for failure to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim states enough facts to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a Rule 12(b)(6) motion, a court may consider the facts alleged in the complaint, along with "documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice." *K.W. v. District of Columbia*, 385 F. Supp. 3d 29, 36 (D.D.C. 2019). While a court must accept the factual allegations in the complaint as true, it is not required to credit legal conclusions. *Id.*

### B.  Motion for Summary Judgment

A court may grant summary judgment only if a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a summary judgment motion, all inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Facts are material if a "dispute over [them] might affect the outcome of a suit under governing law." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute about a material fact is "genuine" if the nonmovant presents evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. DISCUSSION

There are several pending motions in this case. The Court will first address Laborforce's motion to dismiss for failure to state a claim. Then, the Court will turn to the motion for partial summary judgment, where the issue underlying most of the present motions, including the discovery motions, lies: whether the arbitrator's determination to alter the withdrawal liability and the defendants' subsequent payment of the recalculated amount moots this case in its entirety. Finally, the Court will address the Trustees' motion to file a Fourth Amended Complaint and the discovery disputes.

### A.  Laborforce's Motion to Dismiss Will Be Denied Because The Trustees Plausibly Alleged Successor Liability

Laborforce argues that the Trustees have not stated a cognizable claim for successor liability because they failed to plausibly allege that Laborforce substantially assumed the Employees Entities' assets or knew of the Employees Entities' withdrawal liability. Laborforce's Mot. to Dismiss 4. This is a curious argument, because this Court has already concluded when it

issued the April Injunction that the Trustees "presented credible evidence" that they would succeed on their successor liability claims against Laborforce. *Trs. of IAM Nat'l Pension Fund*, 2021 WL 1546947, at *7. But because Laborforce argues that the documents relied on during the preliminary injunction proceedings cannot be relied on when considering its motion to dismiss, Laborforce's Reply 3, ECF No. 75, the Court will provide its analysis.

This Court previously laid out the test for successor liability that applies "where an employer assessed with withdrawal liability allegedly sells its assets to another entity." *Trs. of IAM Nat'l Pension Fund*, 2021 WL 1546947, at *6. A successor can be held liable for its predecessor's withdrawal liability when the successor (1) substantially assumes the predecessor's assets, (2) "continues the predecessor's operations without interruption or substantial change," and (3) had notice of the predecessor's withdrawal liability when the successor acquired the predecessor's assets. *Id*. (quoting *Indiana Elec. Workers Pension Benefit Fund v. ManWeb Servs., Inc.*, 884 F.3d 770, 776 (7th Cir. 1990)). Courts evaluate whether there is a substantial continuity of the business based on the totality of the circumstances. *Trs. of IAM Nat'l Pension Fund*, 2021 WL 1546947, at *6. Notice can be established by either pointing to facts that demonstrate actual knowledge or by presenting evidence allowing a factfinder to imply knowledge from the circumstances. *Id*. Because this is a motion to dismiss, all the Trustees need to do to survive is plausibly allege facts that would either demonstrate knowledge or allow a factfinder to imply knowledge.

As to the first element, the Trustees plausibly allege that Laborforce substantially assumed M & K Employees Alsip's and M & K Employees Summit's assets. In their complaint, the Trustees state that M & K Employees Alsip & M & K Employees Summit hired employees and then "lease[d]" them to M & K Sales Alsip and M & K Sales Summit. Third Am. Compl. ¶ 2. These

employees perform "all of [the] accounting, financial, operational, and administration functions" of the related Sales Entities. Third Am. Compl. ¶ 4. The Trustees allege that Laborforce subsequently hired all the employees of M & K Employees Alsip and M & K Sales Summit. Third Am. Compl. ¶ 8. This Court agrees with the Trustees that because the business of M & K Employees Alsip and M & K Employees Summit was solely to lease employees to the Sales Entities, the employees are the "assets" here. Pls.' Resp. to Laborforce's Mot. 6, ECF No. 73; *see also Trs. of IAM Nat'l Pension Fund*, 2021 WL 1546947, at *7 (identifying the Employees Entities' assets as "their employees"). Therefore, by alleging that Laborforce hired all of M & K Employees Alsip's and M & K Sales Summit's employees, the Trustees successfully allege that Laborforce substantially assumed their assets. Laborforce argues that the Trustees do "not allege that Laborforce *purchased* the assets of either M & K entity," Laborforce's Mot. to Dismiss 4 (emphasis added), but that argument is irrelevant. The test does not require a purchase of assets, only the substantial assumption of assets. Accordingly, the first element of the successor liability test is plausibly alleged.

The Trustees also adequately allege the second element of the successor liability test—that Laborforce continued the Employees Entities' operations without interruption or substantial change. In the complaint, the Trustees claim that Laborforce assumed the Employees Entities' obligation to lease employees to the Sales Entities "[w]ithin a few months" of Laborforce's creation in October 25, 2018, in order to ensure the "uninterrupted operation of M & K sales." Third Am. Compl. ¶¶ 47, 78. They further allege that Laborforce entered a new collective bargaining agreement with the same Union. *Id.* ¶ 46. And the agreements show "that [Laborforce's] collective-bargaining agreement with the Union covered the same types of employees and provided the same terms and conditions of employment as the collective-

bargaining agreement between M&K Employees Summit (one of the Series LLCs formed under M&K Employees Solutions) and the Union." *Trs. of IAM Nat'l Pension Fund*, 2021 WL 1546947, at *7 (comparing ECF No. 62-4 at 4–5, 6–9, with ECF No. 62-5 at 6–7, 8–11).[2] The Trustees plausibly allege that Laborforce continued the Employees Entities' operations, with the same employees, the same clients, and the same terms and conditions of employment, without interruption.

Finally, the Trustees plausibly allege the third element—that Laborforce knew about M & K Employee Alsip's potential withdrawal liability. The Trustees allege that Rainelle Jansma, the "sole owner, member, and manager of Laborforce" is also the "former owner of M & K Employees." Third Am. Compl. ¶¶ 8, 25, 45. The Court finds that this alleged "overlap in . . . ownership, management, and personnel," *id.* ¶ 79, is sufficient to plausibly allege that a factfinder could "imply knowledge from the circumstances." *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990). The Trustees have plausibly alleged all three elements of the successor liability test, so this Court will **DENY** Laborforce's motion to dismiss.

## B. Defendants' Motion for Partial Summary Judgment Will Be Denied, Because The Trustees' Claims Are Not "Moot"

Defendants jointly move to dismiss the Third Amended Complaint on all counts but one.[3] Defs.' Mot. for Summ. J. 6. They argue that, as a matter of law, the Trustees' claims for delinquent withdrawal liability and liquidated damages are moot because the arbitrator's reduced award has

---

[2] Because the complaint "specifically references" the collective-bargaining agreements between (1) the Employees Entities and the Union, *see* Third Am. Compl. ¶¶ 5, 33, and (2) between Laborforce and the Union, *id.* ¶ 46, they are incorporated by reference into the complaint and the Court may consider them at the motion-to-dismiss stage. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A pleading's reference to even a part of a fully integrated and authentic contract thus incorporates the contract as a whole into the complaint.").

[3] Defendants do not seek summary judgment on Count III, which seeks delinquent contributions from M & K Employees Summit.

been paid. *Id*. The Court is unpersuaded. Defendants' arguments not only are unsupported by case law but would pardon the behavior Congress created the "pay now, dispute later" rule to prevent.

i.   *Defendants Cannot Avoid ERISA's Statutory Penalties By Paying The Unpaid Withdrawal Liability Before Judgment*

Defendants first argue that the Fund cannot maintain this action for delinquent withdrawal liability because the arbitrator "annulled" the withdrawal liability assessment and the recalculated assessment was "paid in full." Defs.' Mot. for Summ. J. 6.[4] Defendants maintain there is "no basis for the Fund to continue to seek collection of interim and accelerated payments" and the Trustees' claims are now "moot." Defs.' Mot. for Summ. J. 6–7. Defendants' arguments have no merit. The Court agrees with the Trustees that their claim for delinquent withdrawal liability includes unfulfilled requests for liquidated damages, interest, and attorneys' fees and costs based on defendants' violation of the "pay now, dispute later" rule. Pls.' Opp'n 12; *see* 29 U.S.C. §§ 1351(a)(1), (b), 1132(g)(2). These damages are separate from withdrawal liability, the Trustees argue, and remain even if the principal withdrawal liability was paid. Pls.' Opp'n 12–13.

Whether the payment of withdrawal liability moots an action under 29 U.S.C. § 1451(b) is an open question in this District. But the statute itself, the purpose of the "pay now, dispute later" rule, and case law from both this and other circuits overwhelmingly persuade this Court that it does not.

The ERISA and the MPPAA require withdrawal liability to be paid "notwithstanding any request for review or appeal of determination of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2). If an employer fails to pay withdrawal liability as prescribed by a plan's

---

[4] The arbitrator has clarified that his use of the word "annul" referred to the *amount* of the award, not the entire withdrawal assessment. ECF No. 100-5 at 1. In other words, there is no dispute that defendants *owed* the Fund withdrawal liability in some amount—what the Trustees recalculated to be $1,797,781. *Id*. The (perhaps imprecise) use of the word "annulled" in no way supports finding the Trustees' claim moot.

trustees—regardless of any dispute—the trustees may initiate an action in federal court seeking relief. 29 U.S.C. § 1451(a)(1). An employer's failure to pay withdrawal liability is treated as a delinquent contribution "within the meaning of [§] 1145 of this title." *Id.* (b). Section 1145, in turn, "obligates employers to make contributions to a multiemployer plan 'in accordance with the terms and conditions' of the plan or a collectively bargained agreement." *Trs. of IAM Nat'l Pension Fund*, 2021 WL 1546947, at *9 (quoting 29 U.S.C. § 1145). Finally, 29 U.S.C. § 1132(g)(2) "sets forth the remedies that 'shall' be awarded in an action to recover delinquent contributions." *Id.* Those remedies are "the unpaid contributions"; the "interest on the unpaid contributions"; an amount equal to the greater of either the "interest on the unpaid contributions" or the "liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of [the unpaid contributions]"; "reasonable attorney[s'] fees and costs"; and any other relief appropriate. 29 U.S.C. § 1132(g)(2). All of these remedies, combined, comprise the damages to which a fund is statutorily entitled.

Put simply, if an employer ignores "pay now, dispute later" and "refuse[s] to follow the statutory procedure for challenging assessments of withdrawal liability," it must pay the corresponding penalty: liquidated damages, interest, costs, and attorneys' fees. *Cent. States, Se. & Sw. Areas Pension Fund*, 960 F.2d at 1347. This portion of the damages for a delinquent withdrawal liability claim is "separate from the underlying withdrawal liability itself." *Chicago Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 534 (7th Cir. 1997). Further, the "interest and liquidated-damages provisions of ERISA apply . . . to contributions that are unpaid at the date of suit (not the date of judgment, as argued by the defendant[s])." *Operating Eng'rs Loc. 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 654 (7th Cir. 2001) (collecting cases with the same holding from the

Second, Eighth, and Ninth Circuits). A defendant therefore cannot simply moot an action for delinquent withdrawal liability by paying unpaid contributions before the date of judgment.

This understanding makes sense when considering the purpose of the "pay now, dispute later" rule. The rule "mitigates the risk that a multiemployer plan will collapse when an employer withdraws and contest the amount of withdrawal liability assessed." *Trs. of IAM Nat'l Pension Fund*, 2021 WL 1546947, at *8. The statutory penalties, including liquidated damages, give the rule teeth. If an employer could delay payment and then avoid the statutory penalties, interest, and attorneys' fees required by ERISA by simply paying the withdrawal liability in full once a suit had been initiated but prior to judgment, it could violate "pay now, dispute later" with impunity.

As additional support, ERISA instructs courts to treat any failure of an employer to pay withdrawal liability within the time prescribed just like a "delinquent contribution" under § 1145. 29 U.S.C. § 1451(b). Parties seeking delinquent contributions are empowered to bring a civil action under § 1132(g)(2). "[T]he Fifth, Seventh, Eighth, and Ninth Circuits have held or indicated that an employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions before entry of judgment in a § 1132(g)(2) action brought to recover delinquent contributions." *Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995).

Defendants also err in their contention that the Trustees cannot seek liquidated damages because no final judgment has been entered in the Trustees' favor. Defs.' Mot. for Summ. J. 14. Defendants misinterpret of the language of the Fund's Trust Agreement. ERISA allows a plan to "adopt rules for the satisfaction of an employer's withdrawal liability" if such rules are "consistent with [ERISA]." 29 U.S.C. § 1399(c)(7).  The relevant language that defendants cite in the Trust

Agreement is materially identical to the language of ERISA and mandates that a court award liquidated damages, interest, and attorneys' fees if "judgment is awarded" for the Trustees. *Compare* Trust Agreement, Article VII § 10(a), ECF No. 100-8 ("[I]f judgment is awarded in favor of the Trustees, the Employer shall pay to the Plan . . ."), *with* 29 U.S.C. § 1132(g)(2) ("In any action under this subchapter . . . in which a judgment  in favor of the plan is awarded, the court shall award the plan . . . ."). Defendants cite no support—indeed, there is none—for the notion that this language or the terms of the Trust Agreement means that a defendant can obviate the penalties from violating "pay now, dispute later" by paying withdrawal liability *before* the Court enters judgement. As the Trustees note, doing so would "eviscerate" the rule. Pls.' Opp'n 14. The language of the Trust Agreement and the statute both state that this Court cannot *grant* liquidated damages until judgment is entered. The Trustees certainly can pursue liquidated damages as they pursue final judgment in their action for delinquent withdrawal liability.

Finally—and at the risk of beating this horse beyond death—Judge Pallmeyer of the Northern District of Illinois has faced a similar case: an employer withdrew from a multiemployer pension fund and the fund notified the employer of their withdrawal liability, but the employer failed to make their required interim payments. *Bridge v. Transpersonnel, Inc.*, No. 03-cv-2437 (RRP), 2004 WL 2034075, at *3 (N.D. Ill. Sept. 10, 2004). When the trustees of the plan filed suit to recover the interim payments, the employer paid the outstanding withdrawal liability and, like here, moved for summary judgment, arguing that the action was moot. *Id*. The court disagreed:

> Controlling case law makes it clear that a pension fund's right to collect penalties for late payment is not extinguished by an employer's payment of those obligations. . . . [A]n employer cannot avoid ERISA's mandatory penalties simply by paying the delinquent contributions after the plan has already filed a lawsuit. Moreover, an employer that fails to pay interim withdrawal payments is liable for penalties even if it is ultimately determined not to owe any withdrawal liability at all. Allowing an employer to

> withhold payment pending a lawsuit and then pay in full without
> incurring any penalties would, in this court's view, be contrary to the
> language of the statute.

*Id*. at \*4–6 (citations omitted). This Court agrees. The Trustees' "demands have been only partially satisfied by [defendants]; the company has refused to pay additional interest, liquidated damages, attorneys' fees and costs provided for by statute." *Id*. at \*6.[5]

> ii.   *The Court Will Deny Defendants' Request For Summary Judgment Based On Their Claim That They Were Never In Default*

In a two-step argument, defendants claim that (1) because they never defaulted, the Trustees could never have properly sought accelerated withdrawal liability (i.e., the lump sum) pursuant to 29 U.S.C. § 1399(c)(5), and thus (2) because there is no proper claim for accelerated withdrawal liability, the Trustees are not entitled to liquidated damages or attorneys' fees.[6] Defs.' Reply 10. In the alternate, defendants contend that whether they were in default is a question for an arbitrator to first decide, Defs.' Reply 5—a baffling argument to maintain when contending that there is no genuine dispute of material fact. But the evidence on the record and the Trust Agreement indicate that defendants *were* in default and the Trustees properly accelerated the withdrawal liability payments. Defendants may present this argument in arbitration, but it does not entitle them to summary judgment.

A plan's trustees are empowered to declare default and immediately accelerate the required payment of all outstanding withdrawal liability based on:

---

[5] Defendants provide a dueling case, but it is factually distinct. *See* Defs.' Mot. for Summ. J. 7 (citing *McGriff v. Schenkel & Sons, Inc.*, No. 114-cv-1742 (TWP) (MPB), 2017 WL 712068 (S.D. Ind. Feb. 23, 2017)). In *McGriff*, the arbitrator concluded that "Schenkel had *not experienced a complete withdrawal* from the Fund and therefore could not be liable under ERISA for withdrawal liability payments." *Id*. at \*3 (emphasis added). Accordingly, the court dismissed the case as moot. *McGriff*, 2017 WL 712068, at \*5. Here, there is no dispute that defendants withdrew from the Fund and owed withdrawal liability. Accordingly, *McGriff* is nonbinding and irrelevant here.

[6] The operative complaint seeks only accelerated withdrawal liability pursuant to 29 U.S.C § 1399(c)(5) based on defendants' default., not interim withdrawal liability payments. Third Am. Compl. ¶¶ 54–58.

> (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, [or]
>
> (B) *any other event defined in rules adopted by the plan* which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

29 U.S.C. § 1399(5)(A), (B) (emphasis added). The Trustees claim that they declared default under both § 1399(5)(A) and (B)—under (A) because the defendants failed to pay, even after a court order, and under (B) based on the terms of the Trust Agreement. Pls.' Opp'n 14–15. Because withdrawal liability cannot be accelerated under subsection (A) while arbitration is pending, *see Cent. States Se. & Sw. Areas Pension Fund*, 620 F.3d at 771–74 & n.8, it is the alleged default under subsection (B) and the specific terms of the Trust Agreement that are relevant here.

The Trust Agreement section regarding insecurity default states:

> The Trustees or their designee may also declare an Employer in default in any circumstances indicating a substantial likelihood that an Employer will be unable to pay its withdrawal liability *such as* if the Employer files a petition under the Bankruptcy Code of any similar proceeding under state law, or [the employer] enters into a compromise with creditors, or undergoes a bulk sale, insolvency, or dissolution of a partnership or corporation.

Tr. Agreement Art. VII § 11(c) (emphasis added). Defendants argue that they did not default under the specific events listed.  Defs.' Reply 11. But their selective quotations ignore that the list is inclusive. And, as defendants concede, M & K Employees Alsip informed the Trustees that it was "financially unable to make *any* payment to the Trustees." Defs.' Reply 11 n.7 (emphasis added). The Court finds that is at least arguably a "circumstance indicating a substantial likelihood that [defendants] will be unable to pay [their] withdrawal liability." A reasonable jury could find the default determination proper.

Defendants' argument that there "needs to be a determination regarding the propriety of any default before any finding of interest, liquidated damages, or attorney[s'] fees" by an arbitrator before this Court grants the Fund interest, liquidated damages, or attorneys' fees is even more perplexing. Defs.' Reply 4. It is *defendants* who have moved for summary judgment. But now, in their motion for summary judgment, they argue that there is a major open question regarding potential default that must first be determined by an arbitrator. Defs.' Reply 4. Needless to say, the argument that there is a dispute over the propriety of the default determination—a dispute that they allege this Court cannot currently resolve—does not support a finding of summary judgment for the defendants.

    *iii.*    *This Court Has Jurisdiction Over The Sales Entities And Laborforce*

Defendants finally argue this Court lacks subject matter jurisdiction over the Sales Entities and Laborforce because a separate jurisdictional basis apart from ERISA is needed for successor liability or alter-ego claims. As support for this theory, they cite *Ellis v. All Steel Const., Inc.*, 389 F.3d 1031 (10th Cir. 2004). *See* Defs.' Mot. for Summ. J. 9. This argument is beyond meritless.

In *Ellis*, a plan obtained a judgment against an employer for delinquent contributions under ERISA. *Ellis*, 389 F.3d at 1032. When that employer failed to pay, the plan filed a separate action in federal court against an alleged alter-ego successor of the first employer. *Id.* The Tenth Circuit found that ERISA itself could not provide a jurisdictional basis for a separate judgment-enforcing action. *Id.* at 1033. Defendants here thus argue that this Court lacks jurisdiction over the Sales

Entities and Laborforce—the alleged alter-egos and successors of the Employees Entities. Defs.' Mot. for Summ. J. 9.

But, as the panel in *Ellis* explained, "[i]f an alter-ego claim is asserted in conjunction with the underlying federal cause of action, the latter may provide the basis for ancillary jurisdiction over the alter-ego claim . . . ; it is only when an alter-ego claim is asserted in a separate judgment-enforcement proceeding that . . . requires an independent basis for federal jurisdiction." *Id.* at 1033. Since the alter-ego and successor liability claims here are asserted in conjunction with the ERISA claim, there is no issue with this Court's subject matter jurisdiction. The claims against Laborforce and the Sales Entities involve the same facts and the same controversy as the ERISA claim, and this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

### C. The Court Will Grant The Trustees' Motion For Leave To File A Fourth Amended Complaint

The Trustees moved for leave to file a Fourth Amended Complaint, adding a new company—M&K Employee Services—as a defendant. Motion for Leave to File a Fourth Amended Complaint ("Mot. for Fourth Am. Compl.") 1, ECF No. 91. The defendants jointly opposed, ECF No. 89, and the Trustees responded, ECF No. 99. Most of the defendants' opposition reiterates the same arguments the Court rejected above—that any amendments to  the complaint are futile because any issues of interim withdrawal liability is now "moot" or that this Court somehow lacks jurisdiction over claims based on successor liability. ECF No. 89 at 10–12. These arguments fail for the same reasons set forth above. Defendants' only novel argument is that the Trustees acted in bad faith to delay proceedings and waited months before filing a motion for leave

to amend. *Id*. at 14. As explained below, that argument will be rejected and leave to file a Fourth Amended Complaint will be **GRANTED**.

Leave to amend a complaint "shall be freely given when justice so requires," but can be refused because of the movant's "undue delay, bad faith, or dilatory motive." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). A plaintiff's awareness "of the information underlying the proposed amendment long before moving for leave to amend the complaint," is evidence of bad faith and undue delay that warrants denial of leave to amend. *Onyewuchi v. Gonzalez*, 267 F.R.D. 417, 420 (D.D.C. 2010). Accordingly, this Court must determine if the Trustees knew of the information underlying the proposed amendment—the addition of M & K Employee Services—significantly before moving to file leave to amend.

Relevant to this inquiry is what information is underlying the proposed amendment—what the "facts upon which the proposed amendment is based" are. *Gonzalez*, 267 F.R.D. at 420. The Fourth Amended Complaint adds M & K Employee Services as a successor of M & K Employees Joliet and M & K Employees Northern Illinois defendants. *See*, *e.g.*, ECF No. 91-1 at 4. It alleges that M & K Employee Services "hired all or substantially all employees of M & K Employees Joliet and Northern Illinois" and assumed their obligations to lease employees to the Sales Entities. *Id*. at 14.  Accordingly, the "information underlying the proposed amendment," *Gonzalez*, 267 F.R.D. at 420, is that M & K Employee Services hired these employees and assumed the leasing obligations. The relevant date in question when determining whether there was bad faith or undue delay is when the Trustees learned this information.

That point came on June 2, 2021, when Chad Boucher filed a sworn statement explaining that only half of the Employees Entities' employees were hired by Laborforce and the Trustees inferred that the other half were hired by M & K Employees Services. Mot. for Fourth Am. Compl.

22

10. Within two months, on July 29, 2021, the Trustees moved to amend their complaint. Mot. for Fourth Am. Compl. Accordingly, there is no evidence of that the Trustees sat on this information for months to cause undue delay or prejudice. Defendants provide no other reason to deny the motion for leave to file the amended complaint. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Leave to amend will be **GRANTED**.

### D. The Trustees' Motion To Compel Will Be Granted And The Defendants' Corresponding Joint Motion For A Protective Order Will Be Denied

Just a few weeks after the arbitrator issued his decision altering the amount of withdrawal liability assessed by the Trustees, defendants jointly moved for a protective order preventing the Trustees from pursuing discovery related to the following requests:

- a Rule 30(b)(6) notice of deposition to Laborforce;
- a Rule 30(b)(6) notice of deposition to the Employees Entities;
- a Rule 30(b)(1) notice of deposition to Chad Boucher, who oversees finances for the Employees Entities;
- third-party subpoenas to Fifth Third Bank and TCF National Bank (together, the "Bank Subpoenas").

Mot. for Prot. Ord. 2, ECF No. 89-1. The Trustees, for their part, moved to compel the Employees entities, Laborforce, and Chad Boucher to appear for the requested depositions pursuant to Rule 37(a)(1), Mot. to Comp., ECF No. 90, and opposed the motion for protective order, ECF No. 93. Defendants opposed the Trustees motion to compel. ECF No. 94. For the below reasons, the Court will **DENY** the defendants' motion for protective order and **GRANT** the Trustees' motion to compel.

#### i.    *The Rule 30(b) Depositions*

The Court will begin with the Rule 30 deposition issues. In April 2021—shortly after this Court entered its second preliminary injunction—the Trustees gave notice for depositions for

Laborforce, the Employees Entities, and Chad Boucher for May 7, 13, and 14, 2021, respectively. Mot. to Comp. 3; ECF No. 94 at 5–6. The parties voluntarily rescheduled the depositions multiple times, until they were finally set for July 14 and 15, 2021. Mot. to Comp. 4; ECF No. 94 at 7. But on July 13, 2021, the arbitrator determined that the Trustees must recalculate the amount of withdrawal liability. ECF No. 100-2 ¶ 6. That same day, defendants cancelled the depositions "indefinitely." Mot. to Comp. 4. Defendants moved for a protective order and refused to schedule any depositions. ECF No. 94 at 8.

In support of their motion for protective order and opposition to the Trustees' motion to compel, defendants sing a song that this Court now knows by heart: because the arbitrator altered the amount of the withdrawal liability assessed, this case is essentially moot, and therefore there is no need for further discovery. *See* Mot. for Prot. Ord. 2–4; ECF No. 94 at 4, 7. For the reasons covered extensively above, *see supra* Part III.B, that argument is rejected. Since defendants have proffered no other justification, the Court will **DENY** the motion for a protective order for the three depositions in question and **GRANT** the Trustees' motion to compel the depositions.

The next question is whether Rule 37 warrants sanctioning defendants by granting the Trustees' attorneys' fees and costs. There are two potential reasons for sanctions here: the successful motion to compel and the failure to attend a scheduled deposition. If a motion to compel is granted, the court must "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney[s'] fees." Fed. R. Civ. P. 37(a)(5)(A). A court may also sanction a party's failure to appear for a properly noticed deposition, including by requiring the offending party or their attorney to pay reasonable expenses (such as attorneys' fees). Fed. R. Civ. P. 37(d)(3). In both situations, sanctions and fees are excused if the opposing party's

nondisclosure or failure to appear was "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii), (d)(3).

A failure to disclose or appear is substantially justified "when there is 'a genuine dispute' . . . as to the appropriateness of the motion." *Alexander v. FBI*, 186 F.R.D. 144, 147 (D.D.C. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). This Court has specifically noted that opposing a motion to compel is "substantially justified' if the motion raised an issue about which reasonable people could genuinely differ" on whether a party was bound to comply with discovery. *Cobell v. Norton*, 226 F.R.D. 67, 91 (D.D.C. 2005) (quoting 8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice and Procedure § 2288 (2d ed. 1994)). In particular, a lack of controlling precedent on an issue can indicate that a losing party's noncompliance is substantially justified. *Norton*, 226 F.R.D. at 91.

Defendants gesture towards the outcome of the arbitration as a substantial justification. ECF No. 94 at 4. They reason that the arbitrator's decision "completely changed the nature of the federal court lawsuit" just one day before the depositions were scheduled to begin. *Id.* at 4. However inartful their argument, the Court agrees that the arbitrator's decision provides a substantial justification for opposing the motion to compel. Though the Court ultimately rejected defendants' arguments, there is no controlling precedent in this District detailing what effect an arbitrator's alteration of withdrawal liability has on a case. There was a "genuine dispute" as to whether *any* additional discovery was necessary or appropriate. Because of this substantial justification, the Court will not grant the attorneys' fees that the Trustees incurred specifically from moving to compel.

However, when it comes to properly-noticed depositions specifically, a failure to appear is not justified "on the ground that the discovery sought was objectionable, unless the party failing

to act has a pending motion for a protective order." Fed. R. Civ. P. 37(d)(2). Defendants did not file their motion for a protective order until July 16, 2021, after the depositions were scheduled, so the relevant protective order cannot excuse their failure. *See* Mot. for Prot. Ord. Accordingly, the Court will sanction the defendants for failing to appear by requiring defendants to pay the Trustees' attorneys' fees and costs incurred in preparing for and conducting the three depositions in question.

In sum, the Court will sanction the defendants for failing to appear, but not for opposing the successful motion to compel. The Court will thus grant the Trustees' attorneys' fees and costs incurred in preparing for and conducting the depositions, but not the fees and costs incurred in drafting the motion to compel.

### ii.        The Scope Of The Bank Subpoenas Is Not Overbroad

Defendants finally argue that the Bank Subpoenas are overbroad and needlessly duplicative. Motion for Prot. Order 5. A court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1)(D). In particular, courts may limit requests for discovery that are "unreasonably cumulative or duplicative." *Danzy v. IATSE Loc. 22*, No. 17-cv-02083 (RCL), 2021 WL 5416630, at *3 (D.D.C. Nov. 19, 2021). To succeed on a motion for a protective order, a party must "make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Alexander*, 186 F.R.D. at 75. This is a "heavy burden" and involves a showing of "'extraordinary circumstances' based on 'specific facts.'" *Id.* (quoting *Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles*, 179 F.R.D. 41, 48 (D. Mass. 1988)).

The Bank Subpoenas request three different categories of documents—two are in dispute.

*See* ECF No. 89-3 at 8. First, defendants oppose the Trustees' request for

> [a]ll documents concerning or relating to any checking, savings,
> brokerage, and other financial accounts held by the Companies,
> including but not limited to account statements, canceled checks,
> signature cards, new account forms, correspondence, wire transfer
> documents, and telephone records from 2012 to present.

ECF No. 89 at 9. Defendants argue that "the records the Fund seeks from the [Sales Entities]

regarding its transactions and interactions with the [Employees Entities] is duplicative of its

request related to the [Employees Entities'] bank records." *Id.* But defendants miss a key point.

The Trustees' claims against the Sales Entities rest on proving that the two companies are "one

[and] the same." ECF No. 93 at 16. The Trustees are not merely requesting bank records that show

how the Sales Entities interact with the Employees Entities. These records may illustrate whether

each company acts independently or whether the Sales Entities are single employers, joint

employers, or alter egos to the Employees Entities. Accordingly, they appropriately seek records

that may show commingling of assets, supervision by the same groups of people, or common

providers, vendors, or customers. The request is not duplicative.

Next, defendants object to the Trustees' request for

> [a]ll documents relating to any other transactions between [the
> banks] and the Companies or between any other person or entity and
> the Companies of which you are aware, which will result or could
> result in any of the Companies becoming entitled to any money,
> assets, property, or credit.

ECF No. 89-3 at 8. The Trustees seem to seek this information primarily to discover whether the

defendants wrongfully violated the March 2020 or April 2021 Injunctions by withholding or hiding

money. ECF No. 93 at 17. If so, such information would support the Trustees motions for

contempt. Though the Court will deny the motions for contempt, *infra*, this request is not

overbroad. First, as Trustees argue, the Sales and Employees Entities' transactional histories may

provide relevant evidence to show "operational integration and overlap," a crucial part of the Trustees' claims for successor liability. ECF No. 93 at 17. Second, the banks in question have not challenged the subpoenas, nor have any other third party. In fact, TCF has already complied. *Id.* Third, it is the defendants' burden to show "good cause" as contemplated by Fed. R. Civ. P. 26(c). *Alexander*, 186 F.R.D. at 75. Despite declaring that "sensitive information" regarding the Sales Entities' vendors, suppliers, and customers, and "other confidential information" will be produced, ECF No. 89 at 9, defendants do not explain why this information is sensitive or what "harm will be suffered without" a protective order, *Alexander*, 186 F.R.D. at 75. Because defendants have not made this required showing, the motion for a protective order will be **DENIED**.

### E. The Trustees' Motion For Civil Contempt Will Be Denied

The final motions this Court will address are the Trustees' two motions for civil contempt: one against M & K Employees Northern Illinois and Chad Boucher for violating the April 2021 Injunction, ECF No. 77, and one against Laborforce and Rainelle Jansma for violating the March 2020 Injunction, ECF No. 78. "Civil contempt is ordinarily used to compel compliance with an order of the court.'" *Cobell v. Norton*, 334 F.3d 1128, 1145 (D.C. Cir. 2003) (quoting *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 828–29 (1994)) (internal citations omitted). A sanction that lacks a "coercive effect" is punitive in nature and therefore constitutes criminal, not civil, contempt. *Bagwell*, 512 U.S. at 829.

Defendants are now in compliance with the April 2021 Injunction after paying the newly assessed withdrawal liability. ECF No. 100-2 ¶ 9. Moreover, this Court has vacated the April 2021 Injunction at the parties' joint request. ECF No. 105. A court may not impose civil contempt "retrospectively for a 'completed act of disobedience'" *Bagwell*, 512 U.S. at 828–29 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 443 (1911)). Retrospective contempt in this

scenario would be criminal contempt, not civil contempt. *Bagwell*, 512 U.S. at 829. Accordingly, the Trustees' motions for civil contempt are **DENIED**.

### IV. CONCLUSION

In sum, the Court will:

- **DENY** Laborforce's motion to dismiss, ECF No. 71;

- **DENY** the Trustees' motion for contempt against M & K Employees Northern Illinois and Chad Boucher, ECF No. 77;

- **DENY** the Trustees' motion for contempt against Laborforce and Rainelle Jansma, ECF No. 78;

- **DENY** defendants' joint motion for protective order, ECF No. 89;

- **GRANT** the Trustees' motion to compel, ECF No. 90, and **SANCTION** defendants for failing to appear for previously-scheduled depositions by awarding attorneys' fees;

- **GRANT** the Trustees' motion for leave to file a Fourth Amended Complaint, ECF No. 91; and

- **DENY** defendants' joint motion for partial summary judgment, ECF No. 100.

A separate Order will follow.

Date: February 28, 2022

Hon. Royce C. Lamberth
United States District Judge

29