## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRUSTEES of the IAM NATIONAL PENSION FUND,<br><br>                    Plaintiffs,<br><br>v.<br><br>M & K EMPLOYEE SOLUTIONS, LLC; M & K EMPLOYEE SOLUTIONS, LLC-ALSIP; M & K EMPLOYEE SOLUTIONS, LLC-ILLINOIS LEASING; M & K EMPLOYEE SOLUTIONS, LLC-JOLIET; M & K EMPLOYEE SOLUTIONS, LLC-NORTHERN ILLINOIS; M & K EMPLOYEE SOLUTIONS, LLC-SUMMIT; M & K QUALITY TRUCK SALES OF ALSIP, LLC; M & K QUALITY TRUCK SALES OF JOLIET, LLC; M & K QUALITY TRUCK SALES OF NORTHERN ILLINOIS, LLC; M & K QUALITY TRUCK SALES OF SUMMIT, LLC; LABORFORCE, LLC; M & K EMPLOYEE SERVICES, INC.; CHAD BOUCHER; and JODI BOUCHER,<br><br>                    Defendants. | Case No. 1:20-cv-00433-RCL |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

II.   STATEMENT OF MATERIAL UNDISPUTED FACTS AND
      PROCEDURAL HISTORY ..................................................................... 2

      A.    The Fund's Withdrawal Liability Assessment ......................................... 2

      B.    Proceedings in the District Court and in Arbitration............................ 3

      C.    Jodi's Home Renovation Hobby ................................................................ 4

III.  SUMMARY JUDGMENT STANDARD ............................................... 6

IV.   ARGUMENT ........................................................................................... 7

      A.    Controlled Group Liability......................................................................... 7

      B.    Jodi's Home Renovation Hobby Was Not A Trade Or Business............ 8

            1.    The primary purpose of Jodi's home renovation hobby was
                  not to generate income or profit. ..................................................... 9

            2.    Jodi did not conduct her home renovation hobby with the
                  continuity and regularity of a "trade or business." .................... 12

            3.    Characterizing Jodi's home renovation hobby as a "trade or
                  business" would conflict with the purpose of controlled
                  group liability................................................................................... 14

      C.    Jodi's Home Renovation Hobby Was Not Part Of A Controlled
            Group On The Withdrawal Date .......................................................... 17

V.    CONCLUSION..................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Trustees of the Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.*,
  830 F.2d 1009 (7th Cir. 1987) ............................................................... 7, 14

*Celotex Corp. v. Catrett*,
  477 U.S. 317, (1986) ....................................................................... 6, 7

*Cent. States, Se. & Sw. Areas Pension Fund v. White*,
  258 F.3d 636, 640 (7th Cir. 2001) ....................................... 7, 8, 9, 11, 12, 14, 15, 16

*Central States, Southeast and Southwest Areas Pension Fund v. Fulkerson*,
  238 F.3d 891 (7th Cir. 2001) ................................... 7, 8, 10, 11, 12, 13, 14, 15, 17

*Central States, Southeast and Southwest Areas Pension Fund v. Messina Products, LLC*,
  706 F.3d 874 (7th Cir. 2013) ..................................................................... 17

*Central States, Southeast and Southwest Areas Pension Fund v. SCOFBP, LLC*,
  668 F.3d 873 (7th Cir. 2011) ................................................................. 8, 17

*Central States, Southeast and Southwest Areas Pension Fund v. Slotky*,
  956 F.2d 1369 (7th Cir.1992) ................................................................... 15

*Central States, Southeast and Southwest Pension Fund v. Personnel, Inc.*,
  974 F.2d 789 (7th Cir.1992) ..................................................................... 13

*Commissioner of Internal Revenue v. Groetzinger*,
  480 U.S. 23 (1987) ............................................................................. 8

*Groetzinger v. Comm'r of Internal Revenue*,
  771 F.2d 269 (7th Cir.1985) ..................................................................... 9

**Statutes**

29 U.S.C. § 1301(b)(1) ...................................................... 4, 7, 8, 10, 11, 14

29 U.S.C. § 1381(b)(1) ........................................................................... 1

29 U.S.C. § 1401(a) .............................................................................. 3

29 U.S.C. §§ 1001-1371 .......................................................................................... 7

29 U.S.C. §§ 1381-1461 .......................................................................................... 7

Internal Revenue Code Section 162(a) ................................................................... 8

**Rules**

Fed. R. Civ. P. 56(c) .............................................................................................. 6

Defendants, Chad Boucher (Chad) and Jodi Boucher (Jodi) (collectively, Chad and Jodi), husband and wife, respectfully submit the following memorandum in support of their motion for summary judgment on Count X of the Fifth Amended Complaint of Plaintiff, Trustees of the IAM National Pension Fund (the Fund).

## I.   INTRODUCTION

Individuals who own companies that are required to contribute to pension funds generally are not personally responsible for the withdrawal liability their companies incur under the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA.) The Fund nevertheless seeks to impose the withdrawal liability of Defendant, M&K Employee Solutions, LLC (M&K Employee Solutions) on Chad and Jodi by claiming that they qualify as MPPAA "employers" because Jodi allegedly operated a "trade or business" that was under common control with M&K Employee Solutions within the meaning of 29 U.S.C. § 1381(b)(1) (Section 1381(b)(1)). *See Fifth Amended Complaint,* Count X, ¶¶ 96-101. This misguided theory fails for at least two reasons, and Chad and Jodi are entitled to summary judgment.

First, Jodi's part-time hobby of renovating and selling properties does not qualify as a "trade or business" under Section 1381(b)(1). The statute only covers regularly conducted activities engaged in for the primary purpose of generating income or profit. Jodi's home renovation hobby was not a "trade or business" because Jodi's primary purpose was to give her a creative outlet following the death of her mother, not to generate income or profits. The undisputed evidence shows that Jodi simply wanted to make enough money to keep her hobby going, and while she sold houses for more than the purchase price, she always used 100% of the proceeds to fund

1

the purchase and renovation of another house to work on. As well-established case law holds, a personal hobby like Jodi's is simply not a "trade or business," even when it involves investment activities that produce income.

Second, the owners of a "trade or business" are only responsible for withdrawal liability if the owners are in control of both the "trade or business" and the withdrawing employer as of the date the employer withdraws from the Fund. There is no dispute that (1) M&K Employee Solutions withdrew from the Fund on December 31, 2018 (the Withdrawal Date), and (2) Jodi sold the last property she would ever renovate in her individual capacity on December 28, 2018, before the Withdrawal Date. While Chad and Jodi continued to renovate houses after the Withdrawal Date, they did so either on behalf of M&K Employee Solutions or another entity called CJKA Properties, LLC. Thus, even if Jodi's individual home renovation hobby had been a "trade or business" under Section 1381(b)(1) (it wasn't), that "trade or business" ended on December 28, 2018, and therefore was not under common control with M&K Employee Solutions as of the Withdrawal Date. Chad and Jodi therefore are not responsible for M&K Employee Solutions' withdrawal liability under the MPPAA.

## II.  STATEMENT OF MATERIAL UNDISPUTED FACTS AND PROCEDURAL HISTORY

### A.  The Fund's Withdrawal Liability Assessment

Effective December 31, 2014, Chad purchased a 100% interest in a group of entities referred to here as the M&K Employee Defendants. *Defendants Chad and*

*Jodi Boucher's Statement of Material Undisputed Facts* (SMF) at 1.)[1]  Some of the M&K Employee Defendants were obligated under collective bargaining agreements to make contributions to the Fund's multiemployer pension plan. (SMF 2.) By 2018, M&K Employee Alsip was the only entity contributing to the Fund. (SMF 3.) On October 11, 2018, M&K Employee Alsip served notice on the Fund that it was terminating the applicable CBA effective December 31, 2018. (SMF 4). The last contribution made to the Fund on behalf of any M&K Employee Defendant was for work performed through December 31, 2018 by M&K Employee Alsip. (SMF 5.) As of December 31, 2018, no M&K entity was obligated to contribute to the Fund and all agreements with the Fund were terminated. (SMF 6.) On June 14, 2019, the Fund issued a Notice and Demand for the payment of a complete withdrawal liability assessment in the amount of $6,158,482.00, including a payment schedule outlining quarterly installment payments in the amount of $352,721.00. (SMF 7.)

### B.    Proceedings in the District Court and in Arbitration

M&K Employee Defendants timely commenced arbitration, pursuant to 29 U.S.C. § 1401(a), on November 20, 2019. (SMF 8.) While arbitration was pending, on February 14, 2020, the Fund brought this collection lawsuit seeking to collect interim withdrawal liability payments based on the "pay now, dispute later" principle. (ECF 1.)

---

[1]    These entities are Defendants, M&K Employee Solutions, LLC ("M&K Employee Solutions"), M&K Employee Solutions, LLC – Joliet ("M&K Employee Joliet"), M&K Employee Solutions, LLC – Alsip ("M&K Employee Alsip"), M&K Employee Solutions, LLC – Summit ("M&K Employee Summit"), M & K Employee Solutions, LLC - Northern Illinois ("M&K Employee Northern Illinois"), M&K Employee Solutions, LLC – Illinois Leasing ("M&K Employee Illinois Leasing").

On July 13, 2021, the arbitrator declared that the Fund assessment was improper and invalid and ordered the Fund to annul its assessment of withdrawal liability in the amount of $6,158,482.00, and to recalculate the assessment. (SMF 9.) Pursuant to the Arbitration Award, the Fund recalculated the withdrawal liability assessment and assessed M&K the amount of $1,787,781. (SMF 10.) The revised assessment was paid in full on August 16, 2021, less than 30 days later. (SMF 11.)

On June 22, 2022, the Fund filed its Fifth Amended Complaint (ECF 143), adding Chad and Jodi to the case in Count X as defendants and alleging that they are jointly and severally liable for the M&K Employee Defendants' withdrawal liability. According to the Fund, Chad and Jodi operated an unincorporated home renovation operation that qualified as a "trade or business" under 29 U.S.C. § 1301(b)(1), and which was under common control with the M&K Employee Defendants.   Fifth Amended Complaint, Count X, ¶¶ 96-101.

### C.    Jodi's Home Renovation Hobby

Throughout most of her adult life, Jodi has been primarily a homemaker and caretaker for her children. (SMF 12.) She was also engaged with mentoring high school students and taking care of her elderly parents. (SMF 13.)  After Jodi's mother passed away in 2015, Jodi decided she needed a hobby to keep her busy. (SMF 14.) She had helped friends decorate and remodel their homes and also enjoyed looking at houses and thought that home renovation would satisfy her need for an enjoyable diversion. (SMF 15.)

She began in 2015 or 2016 by scanning online sources for homes that appeared to need renovation and focused on those that "looked like a decent deal that I could

have fun with and, you know, purchase that and renovate and hopefully not lose money." (SMF 16.)  Jodi eventually found a house, purchased it with her own money, and began renovation work. (SMF 17.) She funded all of the renovation work using her personal assets. (SMF 18.) Jodi sold her first property and used the proceeds to purchase another house to renovate. (SMF 19.)

Jodi decided whether to purchase a home and how to renovate it. (SMF 20.) Chad's only involvement in Jodi's hobby was to assist with occasional lawn mowing. (SMF 21.) Jodi never attempted to quantify or allocate money towards any of the time she spent on her hobby or any of the time Chad spent helping with yard work. (SMF 22.)

Jodi and Chad did not depend on Jodi's hobby for income or to build a portfolio of properties to rent or to hold. (SMF 23.) Indeed, Jodi simply hoped to make enough money to keep her hobby going, and her primary objective was to just break even. (SMF 24.) As Jodi put it, "I was just making sure I wasn't losing money. I mean, that was my main goal. I truly enjoy doing this, and my main goal was to not lose [money]." (SMF 25.) To that end, Chad and Jodi did not pocket any gains on houses Jodi sold. Rather, Jodi took all of the money she made renovating a house and used that money to purchase and fund the renovation of another home. (SMF 26.)

Jodi did not have an office, a separate phone line, a company car, or any other trappings of an actual business. (SMF 27.) Nor did she have a separate business bank account. (SMF 28.) She never solicited homes to renovate through advertising, reasoning that she didn't want to take on extra work because "this was just my hobby,"

and that, "between, like, raising my kids, mentoring high school students, taking care of my parents, this was like my fun part of my day." (SMF 29.) She also left the process of selling her renovated homes to professional realtors so she could focus on the part of her hobby she enjoyed. (SMF 30.)

While Jodi enjoyed her hobby, she did not renovate many houses prior to December 31, 2018, the Withdrawal Date. (SMF 31.)  Indeed, as the Fund alleges, Jodi only purchased, renovated, and sold three houses between 2015, when Jodi took up her hobby, and December 31, 2018, the Withdrawal Date. (SMF 32.) Chad and Jodi reported the gains from Jodi's hobby on their 2017 tax return on "Schedule D – Capital Gains and Losses, Part I, Short-Term Capital Gains and Losses – Assets Held One Year or Less".  They did not report the gain on "Schedule C – Profit of Loss from Business" or "Schedule E – Supplemental Income and Loss." (SMF 33.)

Jodi purchased a fourth home to renovate in September 2018, but sold that house to M&K Employee Solutions on December 28, 2018. (SMF 34.) That was the last home renovation transaction that Chad and Jodi concluded in their individual capacities. (SMF 35.) M&K Employee Solutions eventually sold the house in March 2019. (SMF 36.)

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that there is no genuine issue [of] material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). Rule 56(c) mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Id.*

## IV.   ARGUMENT

### A.   Controlled Group Liability

Under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1371, as amended by the MPPAA, 29 U.S.C. §§ 1381-1461, an employer that stops contributing to a multi-employer pension plan is subject to withdrawal liability, which is the employer's proportionate share of its unfunded vested obligations to the plan. *See*, *e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. White*, 258 F.3d 636, 640 (7th Cir. 2001). Shareholders, owners, and corporate officers of a withdrawing employer are not employers themselves and therefore may not be personally liable for a company's withdrawal liability. *See id.*, 258 F.3d 640, n.3; *Central States, Southeast and Southwest Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 896 (7th Cir. 2001). However, to "'prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities,'" Congress enacted Section 1301(b)(1), which provides that "trades or businesses" under "common control" with a withdrawing employer are jointly and severally liable for the employer's withdrawal liability. *White*, 258 F.3d at 640, 644 (quoting *Bd. of Trustees of the Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.*, 830 F.2d 1009, 1013 (7th Cir. 1987)).[2]

---

[2]     The relevant portion of Section 1301(b)(1) states, "all employees of trades or businesses

This so-called controlled group liability requires proof that (1) the person or entity sought to be charged with withdrawal liability was engaged in a "trade or business," and (2) the "trade or business" and the withdrawing employer were under common control when the employer withdrew from the pension plan. *See Fulkerson*, 238 F.3d at 895; *Central States, Southeast and Southwest Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 881 (7th Cir. 2011) ("Our task is to determine whether common control existed on...the date [the contributing employer] incurred withdrawal liability."). As discussed below, the undisputed evidence demonstrates that Chad and Jodi were not engaged in a "trade or business" when M&K withdrew from the Fund.

### B.    Jodi's Home Renovation Hobby Was Not A Trade Or Business

To determine whether an activity like Jodi's home renovation hobby is a "trade or business" under Section 1301(b)(1), courts look to interpretations of the same phrase under Internal Revenue Code Section 162(a). *White*, 258 F.3d at 642; *Fulkerson*, 238 F.3d at 895. Under that test, taken from the Supreme Court's decision in *Commissioner of Internal Revenue v. Groetzinger*, 480 U.S. 23, 35 (1987), a "trade or business" is an activity done "(1) for the primary purpose of income or profit; and (2) with continuity and regularity." *White*, 258 F.3d at 642 (citing *Fulkerson*, 238 F.3d at 895). Critically, "'[a] sporadic activity, a hobby, or an amusement diversion does not qualify'" as a "trade or business." *Id.* (quoting *Groetzinger*, 480 U.S. at 35), and renovating and selling three or four houses in the four-year period from 2015 to the

---

(whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1).

Withdrawal Date is not the kind of continuity and regularity that characterizes a "trade or business."

### 1.  The primary purpose of Jodi's home renovation hobby was not to generate income or profit.

Jodi's home renovation hobby was not a "trade or business" because the undisputed evidence shows that the primary purpose of the hobby was to provide Jodi a creative outlet, not to generate income or profit. As noted above, Jodi began renovating homes after her mother passed away in 2015 to provide her with a creative outlet doing something she already enjoyed. This is the antithesis of a "trade or business." As the Seventh Circuit explained in *White*, "the term ['trade or business'] does not encompass purely 'personal' activities no matter how 'continuous' or 'extended' the activity may be nor how profitable.'" *White*, 258 F.3d at 642 (quoting *Groetzinger v. Comm'r of Internal Revenue*, 771 F.2d 269, 274 (7th Cir.1985), *aff'd*, 480 U.S. 23)).

While it is undisputed that the primary purpose of Jodi's home renovation hobby was to provide her with a creative outlet, it is also beyond dispute that the purpose of the hobby was *not* the generation of income or profit. Chad and Jodi did not rely on Jodi's hobby for income. Rather, as Jodi explained, her sole financial objective was to at least break even, and hopefully to make enough money so she could continue to renovate houses. In this, she succeeded. She sold each house for more than the purchase price and the cost to renovate, and used 100% of the money from the sale to purchase and fund the renovation of another house. But again, Chad and Jodi did not pocket any of this money.

The fact Jodi was able to sell her project homes for more than their original purchase price does not turn her hobby into a "trade or business." It only indicates that Jodi's hobby may also have qualified as investment activity. But investment in property, whether it be real estate, securities, or other things, with the expectation that the property will increase in value, is simply not a "trade or business" within the meaning of Section 1301(b)(1). As the Seventh Circuit observed in *Fulkerson*, "[o]ne purpose of the *Groetzinger* test is to distinguish trades or business from investments, which are not trades or business and thus cannot form a basis for imputing withdrawal liability under § 1301(b)(1)." *Fulkerson*, 238 F.3d at 895.

The *Fulkerson* case is instructive. There, the defendants were a husband and wife who owned a trucking business that withdrew from a multiemployer pension plan. They owned three properties, which they leased to another trucking business over a ten-year period. The Seventh Circuit held that the couple had not engaged in a "trade or business" simply by owning and profiting from their rental properties. *Id.*, 238 F.3d at 895-96. Rather, the court held that the couple had engaged in the kind of investment activities that do not constitute a "trade or business" under Section 1301(b)(1). To hold otherwise, the court explained, would effectively negate Section 1301(b)(1): "Given the prevalence of investing, permitting the holding of investments (which will normally satisfy the first prong of *Groetzinger* since the purpose is to produce income) without more to be considered regular and continuous activity would eviscerate the limitations placed in the text of § 1301(b)(1)." *Id.*, 238 F.3d at 896.

The Seventh Circuit reached the same conclusion under similar circumstances in *White*. The issue there was whether a husband and wife operated a "trade or business" by renting out two apartments they owned. As in *Fulkerson*, the Seventh Circuit deemed the Whites' rental activities to be "a purely personal investment," and therefore not a "trade or business." *White*, 258 F.3d at 643. In particular, the court noted that the Whites testified that they rented the apartments primarily because the presence of tenants in the apartments, which were located on their residential property, would provide them with some measure of security. *Id*. In light of this testimony, the Court ignored the fact that the Whites benefitted financially from renting their apartments. *Id*. As the Seventh Circuit noted, the mere facts that the Whites "obtained actual and substantial tax benefits from renting the property," "satisfied their mortgage and increased the equity in the property through the rental income," and "obtained deductions and depreciation" could not turn their leasing activities into a "trade or business," because "[t]he same such arguments could be made about any other traditional investment activity." *Id.*, 258 F.3d at 644.

This case is like *Fulkerson* and *White* in that Jodi's home renovation activities were profitable in an economic sense. But for the reasons set out in *Fulkerson* and *White*, that is insufficient to overcome the undisputed fact that Jodi engaged in her home renovation hobby as a creative outlet, not to generate income or profit. The evidence only indicates that Jodi's hobby involved investment activities that, as the Seventh Circuit explained in *Fulkerson* and *White*, do not qualify as a "trade or business" under Section 1301(b)(1).

### 2.    Jodi did not conduct her home renovation hobby with the continuity and regularity of a "trade or business."

Moreover, the undisputed evidence shows that Jodi did not engage in her home renovation hobby with the kind of continuity and regularity that characterizes a "trade or business." As noted above, while Jodi enjoyed her hobby, she did not seek to engage in it to the detriment of her primary activities. She testified that "this was just my hobby," and that, "between, like, raising my kids, mentoring high school students, taking care of my parents, this was like my fun part of my day." (SMF 29.) And when she did fit her home renovation hobby into her schedule, she did not conduct her hobby as a business. She used her personal car, had no office, and paid for projects with her own money out of her personal bank account. These are not features of a regular and continuous business. Rather, they show that Jodi was engaged in a hobby that had features of traditional investment activity. *See White*, 258 F.3d at 643 (holding that the Whites' "engagement in their rental activities was more akin to purely personal investment, and thus was not sufficiently continuous or regular to constitute a trade or business.").

And, as noted above, Jodi renovated and sold just four houses between the time she took up her hobby in 2015 and the December 31, 2018 Withdrawal Date. Further, the Bouchers treated this activity as an investment as indicated by how they treated the gain from the sale of the properties – not as income from a trade or business but as a capital gain from the sale.  (SMF 33.) No factfinder could conclude that this constitutes the continuity and regularity of conduct indicative of a "trade or business." The Seventh Circuit reached a similar conclusion in *Fulkerson*, noting that "Tom

Fulkerson bought only three properties and sold two over a span of more than ten years." *Fulkerson*, 238 F.3d 896 (noting that the Fulkersons' leasing activities "were not sufficiently continuous and regular to constitute a trade or business").

The *Fulkerson* court specifically contrasted that case from the situation in *Central States, Southeast and Southwest Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 792 (7th Cir.1992), in which the defendant was held responsible for withdrawal liability on the basis of his operation of a sophisticated and extensive real estate business. As the Seventh Circuit explained in *Fulkerson*, the defendant in *Personnel* had "much more frequently engaged in activities related to leasing, such as buying and selling multiple properties annually and advertising, than the Fulkersons." *Fulkerson*, 238 F.3d at 896. The Seventh Circuit's summary does not capture the extent of the business activities at issue in *Personnel*. In one of three years before the withdrawal date in *Personnel*, the defendant sold ten properties he had owned less than one year and sold another property he owned less than two years. *Personnel*, 974 F.2d at 795. The next year, he leased five properties for which he received rents, sold a building he owned for six years (which he previously leased to the withdrawing entity), and bought and sold another six properties he owned for fewer than six months. *Id.* And in the year of the withdrawal, he leased three properties for rents, sold a rental property held for five years, and sold another rental property in which he had a half-interest. *Id.*

This case is nothing like *Personnel*. Jodi only bought and sold four properties in four years. Unlike the defendant in *Personnel*, Jodi did not produce regular income by

renting her properties, and she conducted no advertising. And while Jodi sold her houses for more than she paid, she did not pocket the proceeds but simply bought herself the chance to continue with her home renovation hobby. At most, this evidence establishes that Jodi was engaged in a personal hobby that involved features of investing. This case is accordingly like *Fulkerson* and *White*, and entirely unlike *Personnel*.

> **3.    Characterizing Jodi's home renovation hobby as a "trade or business" would conflict with the purpose of controlled group liability.**

Finally, it would violate the purpose of controlled group liability to hold Chad and Jodi individually liable for the M&K Employee Defendants' withdrawal liability on the basis of Jodi's home renovation hobby. Congress enacted Section 1301(b)(1) to "'prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities.'" *White*, 258 F.3d at 644 (quoting *Bd. of Trustees of the Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.*, 830 F.2d 1009, 1013 (9th Cir.1987)). But Section 1301(b)(1) expressly aims this anti-fractionalization policy at commonly controlled *businesses*. Congress unambiguously designed Section 1301(b)(1) to *avoid* "impos[ing] automatic personal liability on individuals who own companies that are required to contribute to pension funds" by "stating that only 'trades or businesses' can be considered as a single employer" subject to controlled group liability. *Fulkerson*, 238 F.3d at 896.

In light of these policies, characterizing Jodi's home renovation hobby as a "trade or business" under Section 1301(b)(1) would only undermine the statute. Jodi started her home renovation hobby by purchasing a single home, renovating it, and

taking the proceeds to purchase another home to renovate. She did this four times in the four years between 2015 and the Withdrawal Date. There is simply no possibility that Chad and Jodi used Jodi's home renovation hobby to dissipate or fractionalize the assets of the M&K Employee Defendants or to avoid their withdrawal liability. There is certainly no evidence of this. It would therefore serve no statutory purpose to deem Jodi's home renovation hobby a "trade or business." *See White*, 258 F.3d at 644 (noting that "the Whites' rental activity has absolutely no possibility of being used to dissipate or fractionalize Jones Transfer's corporate assets and thus avoid withdrawal liability") (citing *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1374 (7th Cir.1992) ("the purpose of limiting controlled group membership to persons engaged in trades or businesses is to protect the owners of corporations from having to dig into their pockets to make good the withdrawal liability of their corporations.").

Indeed, Jodi's home renovation hobby had no relationship whatsoever to the operations of the M&K Employee Defendants. It is true that a side activity like Jodi's home renovation hobby does not have to be related to or in the same line of business as the withdrawing entity to qualify as a "trade or business" under Section 1301(b)(1). But as the Seventh Circuit has noted, the absence of any relationship between the two aside from common control militates against finding the side activity to be a "trade or business." *See Fulkerson*, 238 F.3d at 641, n.6 (noting "the irony … that while courts have typically held that the businesses do not have to be "related," most of the cases" imposing controlled group liability "involved a business which leased property to the

15

business incurring withdrawal liability.") The reason for this is that the possibility of impermissible fractionalization diminishes in the absence of a relationship between the alleged business and the withdrawing entity. As the Seventh Circuit noted in *White*, "[a] law with the sound purpose of preventing fractionalization should not be stretched to such an extreme application that would expose a common owner of *a completely unrelated personal business* to such withdrawal liability." *White*, 258 F.3d at 644 (emphasis added).

But that is precisely what the Fund is attempting to do here. The Fund seeks to hold Chad and Jodi personally liable for the M&K Employee Defendants' withdrawal liability because Jodi engaged in a completely unrelated personal hobby that could not and did not dissipate or fractionalize the M&K Employee Defendants' assets to avoid their withdrawal liability. In the words of the Seventh Circuit, to "expose a common owner of a completely unrelated personal [hobby] to such withdrawal liability" would "stretch" Section 1301(b)(1) to "an extreme application" far beyond the letter and spirit of the statute.

Characterizing Jodi's home renovation hobby as a "trade or business" is not simply inconsistent with the primary anti-fractionalization purpose of controlled group liability, it would directly undermine the rights of business owners to engage in the ownership of real property and other investment holdings. In *White*, the Seventh Circuit cited a scholarly article for the proposition that imposing personal liability on the basis of real estate investment holdings "may cause the average small business owner to avoid ownership of real property." *White*, 258 F.3d at 644-54 (citing Susan C.

Glen, "Central States v. Personnel, Inc.: When Real Estate Investments Create Personal Liability under the Multiemployer Pension Plan Amendments Act of 1980," 78 Minn. L. Rev. 501, 524-25 (1993)). The Seventh Circuit's fear is justified. Imposing personal withdrawal liability on individual members of a controlled group simply because they hold investment property would unfairly and improperly discourage those individuals from owning such property. But as the Seventh Circuit noted in *Fulkerson*, Section 1301(b)(1) "was not intended to impose automatic personal liability on individuals who own companies that are required to contribute to pension funds." *Fulkerson*, 238 F.3d at 896.

### C.   Jodi's Home Renovation Hobby Was Not Part Of A Controlled Group On The Withdrawal Date

Finally, the owners of a "trade or business" are only responsible for withdrawal liability if the owners are in control of both the "trade or business" and the withdrawing employer as of the date the employer withdraws from the fund. *SCOFBP, LLC*, 668 F.3d at 881 ("Our task is to determine whether common control existed on...the date [the contributing employer] incurred withdrawal liability."); *Central States, Southeast and Southwest Areas Pension Fund v. Messina Products, LLC*, 706 F.3d 874, 886 (7th Cir. 2013) ("[W]hether organizations are under 'common control' is determined as of the date of the withdrawal."). Chad and Jodi could not be personally liable for the M&K Employee Defendants' withdrawal liability even if Jodi's home renovation hobby was a "trade or business" because her hobby was not under common control with the M&K Employee Defendants as of the Withdrawal Date.

17

It is undisputed that the M&K Employee Defendants withdrew from the Fund on December 31, 2018. There is also no dispute that Jodi sold the last property she would ever renovate in her individual capacity on December 28, 2018, before the Withdrawal Date. And while Chad and Jodi continued to renovate houses after the Withdrawal Date, they did so on behalf of M&K Employee Solutions and a non-party entity called CJKA Properties, LLC. Thus, even if Jodi's individual home renovation hobby had been a "trade or business" under Section 1381(b)(1) (it wasn't), that "trade or business" ended on December 28, 2018. Having concluded on December 28, 2018, Jodi's home renovation hobby was not (and indeed could not have been) under common control with M&K as of the Withdrawal Date. Chad and Jodi therefore cannot be liable for the M&K Defendants' withdrawal liability as employers under the MPPAA.

## V.    CONCLUSION

Chad and Jodi are entitled to summary judgment because the undisputed evidence shows that Jodi's home renovation hobby was not a "trade or business" under Section 1301(b)(1). But in any case, Jodi's home renovation hobby, even if determined to be a "trade or business," ended as a sole proprietorship on December 28, 2018 and therefore was not under common control with the M&K Employee Defendants as of the Withdrawal Date. Chad and Jodi accordingly cannot be liable for the withdrawal liability of the M&K Employee Defendants under the Fund's controlled group liability theory. The Court should enter summary judgment for Chad and Jodi on Count X of the Fifth Amended Complaint.

Dated: October 7, 2022                    Respectfully submitted,

By:  /s/ Donald J. Vogel
                    Donald J. Vogel (*Pro Hac Vice*)
                    SCOPELITIS, GARVIN, LIGHT,
                      HANSON & FEARY, P.C.
                    30 West Monroe Street, Suite 1600
                    Chicago, IL 60603
                    Telephone: 312 255 7178
                    Facsimile: 312 422 1224
                    E-Mail: dvogel@scopelitis.com

                    William H. Shawn (DC Bar # 198416)
                    SHAWNCOULSON, LLP
                    1320 19th Street NW, Suite 601
                    Washington D.C. 20036
                    Telephone: 202 331 7900
                    Facsimile: 202 664 8383
                    E mail: wshawn@shawncoulson.com

                    ***Attorneys for Chad and Jodi Boucher***

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Donald J. Vogel*