**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

-----------------------------------------------------------------------X

TRUSTEES of the IAM NATIONAL PENSION
FUND,

                             Plaintiffs,

               - against -

M & K EMPLOYEE SOLUTIONS, LLC; M & K
EMPLOYEE SOLUTIONS, LLC-ALSIP; M & K
EMPLOYEE SOLUTIONS, LLC-ILLINOIS
LEASING; M & K EMPLOYEE SOLUTIONS,
LLC-JOLIET; M & K EMPLOYEE SOLUTIONS,
LLC-NORTHERN ILLINOIS; M & K EMPLOYEE
SOLUTIONS, LLC-SUMMIT; M & K QUALITY
TRUCK SALES OF ALSIP, LLC; M & K QUALITY
TRUCK SALES OF JOLIET, LLC; M & K QUALITY
TRUCK SALES OF NORTHERN ILLINOIS, LLC; M
& K QUALITY TRUCK SALES OF SUMMIT, LLC;
LABORFORCE, LLC; M & K EMPLOYEE
SERVICES, INC.; CHAD BOUCHER; and JODI
BOUCHER,

                            Defendants.

-----------------------------------------------------------------------X

No.: 1:20-cv-00433-RCL

**PLAINTIFFS' RESPONSE TO CHAD AND JODI BOUCHER'S
STATEMENT OF UNDISPUTED MATERIAL FACTS AND
<u>STATEMENT OF ADDITIONAL MATERIAL FACTS NOT IN DISPUTE</u>**

In accordance with Federal Rule of Civil Procedure 56 and Local Rule 7(h)(1), Plaintiffs,

the Trustees (the "Trustees") of the IAM National Pension Fund (the "Fund"), respectfully

submit the following response to Defendants Chad and Jodi Boucher's Statement of Undisputed

Material Facts (ECF No. 162-2), as well as submit additional undisputed facts that are material to

the stated grounds for Defendants' Motion for Summary Judgment (ECF No. 162), but are not

identified in Defendants' 7(h)(1) Statement.

1.      Effective December 31, 2014, Chad purchased a 100% interest in a group of entities referred to here as the M&K Employee Defendants.[1] *Affidavit of Chad Boucher* ("Boucher Aff."), attached hereto as Exhibit 1, at ¶ 3; *see* Exhibit 2 hereto.

**RESPONSE:**  Undisputed.

2.      Some of the M&K Employee Defendants were obligated under collective bargaining agreements to make contributions to the Fund's multiemployer pension plan. *Boucher Aff. at ¶ 5; See Stipulation of Undisputed Facts ("Stipulation")*, attached hereto as Exhibit 3, at ¶¶ 24-30.

**RESPONSE:**  Undisputed.

3.      By 2018, M&K Employee Alsip was the only entity contributing to the Fund. *Stipulation* at ¶ 30.

**RESPONSE:**  Undisputed.

4.      On October 11, 2018, M&K Employee Alsip served notice on the Fund that it was terminating the applicable CBA effective December 31, 2018. *Boucher Aff.* at ¶ ; *see* Exhibit 4 hereto.

**RESPONSE:**  Undisputed.

---

[1] These entities are Defendants, M&K Employee Solutions, LLC ("M&K Employee Solutions"), M&K Employee Solutions, LLC – Joliet ("M&K Employee Joliet"), M&K Employee Solutions, LLC – Alsip ("M&K Employee Alsip"), M&K Employee Solutions, LLC – Summit ("M&K Employee Summit"), M & K Employee Solutions, LLC - Northern Illinois ("M&K Employee Northern Illinois"), M&K Employee Solutions, LLC - Illinois Leasing ("M&K Employee Illinois Leasing").

5.      The last contribution made to the Fund on behalf of any M&K Employee Defendant was for work performed through December 31, 2018 by M&K Employee Alsip. *Boucher Aff.* at ¶ 7; *Stipulation* at ¶ 30.

**RESPONSE:**  Undisputed.

6.      As of December 31, 2018, no M&K entity was obligated to contribute to the Fund and all agreements with the Fund were terminated. *Boucher Aff.* at ¶ 8; *Stipulation* at ¶ 30.

> **RESPONSE:**  Disputed because the referenced collective bargaining agreements were not with the Fund, but with the Automobile Mechanics' Local No. 701, International Association of Machinists and Aerospace Workers, AFL-CIO.  (ECF No. 160-16 ¶ 24.)

7.      On June 14, 2019, the Fund issued a Notice and Demand for the payment of a complete withdrawal liability assessment in the amount of $6,158,482.00, including a payment schedule outlining quarterly installment payments in the amount of $352,721.00. *Stipulation* at ¶ 33.

**RESPONSE:**  Undisputed.

8.      M&K Employee Defendants timely commenced arbitration, pursuant to 29 U.S.C. § 1401(a), on November 20, 2019. *Stipulation* at ¶ 35

**RESPONSE:**  Undisputed.

9.      On July 13, 2021, the arbitrator declared that the Fund assessment was improper and invalid and ordered the Fund to annul its assessment of withdrawal liability in the amount of $6,158,482.00, and to recalculate the assessment. (*Boucher Aff.* at ¶ 9; *see* Exhibit 5 hereto.)

> **RESPONSE:**  Disputed because the arbitrator did not determine that the assessment was "invalid."  (ECF No. 162-7 at 36.)

10.    Pursuant to the Arbitration Award, the Fund recalculated the withdrawal liability

assessment and assessed M&K the amount of $1,787,781. ((*Boucher Aff.* at ¶ 10; *see* Exhibit 6

hereto.)

> **RESPONSE:**  Disputed because the recalculated assessment was for $1,797,781, not $1,787,781.  (ECF No. 162-8.)

11.    The revised assessment was paid in full on August 16, 2021, less than 30 days

later. (*Boucher Aff.* at ¶ 11; *see* Exhibit 7 hereto.)

> **RESPONSE:**  Disputed.  Between April 30, 2021 and August 16, 2021, the Fund received payments totaling $1,797,781, which is numerically equal to the amount of the recalculated assessment.  (ECF No. 160-1 ¶ 11.)  Whether those payments constitute payment "in full" of the recalculated assessment is a legal question disputed by the parties in their motions for summary judgment.  (ECF No. 160, Brief at 21-22; ECF No. 161-1 at 21-23.)

12.    Throughout most of her adult life, Jodi has been primarily a homemaker and

caretaker for her children. *Deposition of Jodi Boucher* ("J. Boucher Dep.") at 11:7-12:24, 15:1-6,

attached hereto as Exhibit 8.

> **RESPONSE:**  Disputed because Jodi Boucher ("Jodi") testified that she earned income operating a daycare business for seventeen years while she watched her own children. (ECF No. 162-10 at 11:23-12:24.)

13.    She was also engaged with mentoring high school students and taking care of her

elderly parents. *J. Boucher Dep.* at 42:6-10.

> **RESPONSE:**  Undisputed.

14.    After Jodi's mother passed away in 2015, Jodi decided she needed a hobby to

keep her busy. *J. Boucher Dep.* at 110:2-11.

> **RESPONSE:**  Disputed because Jodi testified that when she ceased operating her daycare business, she started flipping homes.  (ECF No. 162-10 at 11:23-13:6, 14:5-15:6.)  Further, whether the Bouchers' home-flipping activities are considered a "hobby" is a legal question disputed by the parties in their motions for summary judgment.  (ECF No. 160, Brief at 25-27; ECF No. 162-1 at 8-17.)

4

15.    She had helped friends decorate and remodel their homes and also enjoyed looking at houses and thought that home renovation would satisfy her need for an enjoyable diversion. *J. Boucher Dep.* at 14:18-15:16.

**RESPONSE:** Undisputed.

16.    She began in 2015 or 2016 by scanning online sources for homes that appeared to need renovation and focused on those that "looked like a decent deal that I could have fun with and, you know, purchase that and renovate and hopefully not lose money." *J. Boucher Dep.* at 16:18-17:6.

> **RESPONSE:** Disputed that Jodi's objective was to "hopefully not lose money" because she and Chad Boucher ("Chad") testified that they hoped to make a profit from their home flipping activities.  (ECF No. 162-10 at 17:13-20, 109:1-14; Supplemental Declaration of Neil V. Shah ("Supp. Shah Decl."), Ex. 1 at 95:15-96:2.)

17.    Jodi eventually found a house, purchased it with her own money, and began renovation work. *J. Boucher Dep.* at 22:1-4.

> **RESPONSE:** Disputed because the first house (4140 Coit Avenue NE) was purchased jointly with Jodi's husband, Chad (ECF No. 160-22 ¶ 48), with money from their joint personal bank account (ECF No. 162-10 at 22:1-4, 84:14-85:1).

18.    She funded all of the renovation work using her personal assets. *J. Boucher Dep.* at 22:5-10.

> **RESPONSE:** Disputed because Jodi testified that renovation work was funded through her joint personal bank account with Chad.  (ECF No. 162-10 at 22:5-10, 40:17-25, 64:4-65:4, 71:20-24, 84:14-85:1, 108:6-16, 111:7-18.)

19.    Jodi sold her first property and used the proceeds to purchase another house to renovate. *J. Boucher Dep.* At 17:21-25, 24:1-12.

> **RESPONSE:** Disputed because the Bouchers jointly sold the first house (4140 Coit Avenue NE) and jointly purchased the second house (4678 Bonnie Avenue SE).  (ECF No. 160-22 ¶ 48.)

20.     Jodi decided whether to purchase a home and how to renovate it. *J. Boucher Dep.* at 84:10-85:1.

**RESPONSE:** Undisputed.

21.     Chad's only involvement in Jodi's hobby was to assist with occasional lawn mowing. *J. Boucher Dep.* at 31:7-13.

> **RESPONSE:** Disputed because Chad personally performed landscaping and other services on the properties, reconciled and accounted for costs to renovate the properties, and also prepared and filed joint tax returns. (ECF No. 162-10 at 30:21-31:13, 46:9-23, 82:4-10; ECF No. 160-22 ¶ 51.) Further, whether the Bouchers' home flipping activities are considered a "hobby" is a legal question disputed by the parties in their motions for summary judgment. (ECF No. 160, Brief at 25-27; ECF No. 162-1 at 8-17.)

22.     Jodi never attempted to quantify or allocate money towards any of the time she spent on her hobby or any of the time Chad spent helping with yard work. *J. Boucher Dep.* at 61:7-19.

> **RESPONSE:** Undisputed, except to clarify that the Bouchers allocated expenses associated with flipping homes on their tax returns. (*See, e.g.*, ECF No. 160-25, at Schedule D.) Further, whether the Bouchers' home flipping activities are considered a "hobby" is a legal question disputed by the parties in their motions for summary judgment. (ECF No. 160, Brief at 25-27; ECF No. 162-1 at 8-17.)

23.     Jodi and Chad did not depend on Jodi's hobby for income or to build a portfolio of properties to rent or to hold. *J. Boucher Dep.* at 76:9-16.

> **RESPONSE:** Disputed that the Bouchers did not depend on flipping homes for income because the Bouchers both testified that they hoped to make a profit from their home flipping activities (ECF No. 162-10 at 17:13-20, 109:1-14; Supp. Shah Decl., Ex. 1 at 95:15-96:2), and the profits they made were in fact transferred into their joint personal bank account (ECF No. 162-10 at 106:20-108:16). Further, whether the Bouchers' home flipping activities are considered a "hobby" is a legal question disputed by the parties in their motions for summary judgment. (ECF No. 160, Brief at 25-27; ECF No. 162-1 at 8-17.)

24.     Jodi simply hoped to make enough money to keep her hobby going, and her

primary objective was to just break even. *J. Boucher Dep.* at 42:13-18.

> **RESPONSE:**  Disputed because the Bouchers both testified that they hoped to make a
> profit from their home flipping activities.  (ECF No. 162-10 at 17:13-20, 109:1-14; Supp.
> Shah Decl., Ex. 1 at 95:15-96:2.)  Further, whether the Bouchers' home flipping activities
> are considered a "hobby" is a legal question disputed by the parties in their motions for
> summary judgment.  (ECF No. 160, Brief at 25-27; ECF No. 162-1 at 8-17.)

25.     As Jodi put it, "I was just making sure I wasn't losing money. I mean, that was

my main goal. I truly enjoy doing this, and my main goal was to not lose [money]." *J. Boucher*

*Dep.* at 42:13-18.

> **RESPONSE:**  Disputed because the Bouchers both testified that they hoped to make a
> profit from their home flipping activities.  (ECF No. 162-10 at 17:13-20, 109:1-14; Supp.
> Shah Decl., Ex. 1 at 95:15-96:2.)

26.     To that end, Chad and Jodi did not pocket any gains on houses Jodi sold. Rather,

Jodi took all of the money she made renovating a house and used that money to purchase and

fund the renovation of another home. *J. Boucher Dep.* at 23:9-24:7; 107:24-108:17.

> **RESPONSE:**  Disputed.  The Bouchers (not Jodi alone) sold the homes (ECF No. 160-
> 22 ¶ 48) and the cited evidence does not establish that they did not "pocket any gains" or
> that "all" of the proceeds from each sale were used to purchase the next home.  To the
> contrary, the Bouchers earned a profit on every home they flipped, reported the profits on
> their joint tax returns, and deposited the profits into their personal bank account.  (ECF
> No. 162-10 at 27:24-30:14, 48:22-49:12, 106:20-108:16; ECF No. 160-25, at Schedule D;
> Supp. Shah Decl., Ex. 2 at JB Subp 000056.)

27.     Jodi did not have an office, a separate phone line, a company car, or any other

trappings of an actual business. *J. Boucher Dep.* at 22:25-23:4; 61:25-62:18.

> **RESPONSE:**  Disputed that there were no "trappings of an actual business" as not
> supported by the cited evidence, and contrary to undisputed evidence that, among other
> things, the Bouchers maintained separate business records of all expenses incurred for
> each property (ECF No. 162-10 at 81:25-82:10, 97:16-98:11); retained attorneys for
> advice on what organizational form to use for the business (*id.* at 57:9-13); hired realtors,
> builders, electricians, plumbers, and other professionals to assist them (*id.* at 18:19-
> 21:25); and filed tax returns reporting profits and expenses from flipping homes (*see,
> e.g.*, ECF No. 160-25, at Schedule D; Supp. Shah Decl., Ex. 2 at JB Subp 000056).

28.     Jodi did not have a separate business bank account. *J. Boucher Dep.* at 41:2-13.

**RESPONSE:** Undisputed.

29.     Jodi never solicited homes to renovate through advertising, reasoning that she didn't want to take on extra work because "this was just my hobby," and that, "between, like, raising my kids, mentoring high school students, taking care of my parents, this was like my fun part of my day." *J. Boucher Dep.* at 42:2-12.

> **RESPONSE:** Undisputed, except that whether the Bouchers' home flipping activities are considered a "hobby" is a legal question disputed by the parties in their motions for summary judgment.  (ECF No. 160, Brief at 25-27; ECF No. 162-1 at 8-17.)

30.     She also left the process of selling her renovated homes to professional realtors so she could focus on the part of her hobby she enjoyed. *J. Boucher Dep.* at 59:10-23.

> **RESPONSE:** Disputed because Jodi testified she personally sold one of the "flipped" properties without a realtor (ECF No. 162-10 at 24:8-25:15, 58:25-59:9), and personally staged the other homes before selecting realtors to sell them (*id.* at 18:19-20:1, 48:22-49:3, 70:3-7).  Further, whether the Bouchers' home flipping activities are considered a "hobby" is a legal question disputed by the parties in their motions for summary judgment.  (ECF No. 160, Brief at 25-27; ECF No. 162-1 at 8-17.)

31.     While Jodi enjoyed her hobby, she did not renovate many houses prior to December 31, 2018, the Withdrawal Date. *J. Boucher Dep.* at 17:21-25, 24:8-12, 28:15-18.

> **RESPONSE:** Disputed.  The Bouchers (not Jodi alone) purchased and renovated four homes in the span of two and a half years between June 9, 2016 and December 31, 2018. (ECF No. 160-22 ¶ 48.)  Further, whether the Bouchers' home flipping activities are considered a "hobby" is a legal question disputed by the parties in their motions for summary judgment.  (ECF No. 160, Brief at 25-27; ECF No. 162-1 at 8-17.)

32.     Jodi only purchased, renovated, and sold three houses between 2015, when Jodi took up her hobby, and December 31, 2018, the Withdrawal Date. *Fifth Amended Complaint* at ¶ 48; *Boucher Aff.* at 12; *See* Group Exhibit 9 attached hereto.

> **RESPONSE:** Disputed.  The Bouchers (not Jodi alone) purchased and renovated four homes between June 9, 2016 and December 31, 2018, and sold three of those homes to third-party buyers during that timeframe.  (ECF No. 160-22 ¶ 48.)  Further, whether the Bouchers' home flipping activities are considered a "hobby" is a legal question disputed

8

by the parties in their motions for summary judgment. (ECF No. 160, Brief at 25-27; ECF No. 162-1 at 8-17.)

33.    Chad and Jodi reported the gains from Jodi's hobby on their 2017 tax return on "Schedule D – Capital Gains and Losses, Part I, Short-Term Capital Gains and Losses – Assets Held One Year or Less", as opposed to on "Schedule C – Profit of Loss from Business" or "Schedule E – Supplemental Income and Loss." *Boucher Aff.* at 13; *See* Boucher 2017 Tax Return attached hereto as Exhibit 10.

> **RESPONSE:** Undisputed, except that whether the Bouchers' home flipping activities are considered a "hobby" is a legal question disputed by the parties in their motions for summary judgment. (ECF No. 160, Brief at 25-27; ECF No. 162-1 at 8-17.)

34.    Jodi purchased a fourth house to renovate in September 2018, but sold that house to M&K Employee Solutions on December 28, 2018. *J. Boucher Dep.* at 39:5-7, 49:18-25, 50:1-18. *Boucher Aff.* at 14; *See* Group Exhibit 11 attached hereto.

> **RESPONSE:** Disputed because the Bouchers (not Jodi alone) purchased the fourth home (3740 Benjamin Avenue NE) on September 21, 2018 and transferred it (as opposed to sold it) to M & K Employee Solutions, LLC in January 2019. (ECF No. 160-22 ¶ 48; ECF No. 160-26 ¶¶ 15-16.)

35.    That was the last home renovation transaction that Chad and Jodi conducted in their individual capacities. *J. Boucher Dep.* at 56:15-24; *Boucher Aff.* at 15.

> **RESPONSE:** Disputed because the Bouchers continued to use their personal funds (rather than the funds of any corporate entity) to renovate the 3740 Benjamin Avenue NE property. (ECF No. 162-10 at 39:5-40:25.)

36.    M&K Employee Solutions eventually sold the house in March 2019. *J. Boucher Dep.* at 52:12-53:9; *Boucher Aff.* at 16; *See* Exhibit 12 attached hereto.

> **RESPONSE:** Undisputed.

9

**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS NOT IN DISPUTE**

37.    The Fund is a multiemployer pension benefit plan.  (ECF No. 160-2 at 2.)

38.    M & K Employee Solutions, LLC – Alsip ("M&K ES Alsip"), M & K Employee Solutions, LLC – Joliet ("M&K ES Joliet"), and M & K Employee Solutions, LLC – Summit ("M&K ES Summit") entered into collective bargaining agreements (the "CBAs") requiring them to make contributions to the Fund.  (ECF No. 160-16 ¶ 24.)

39.    The obligations to contribute commenced on October 1, 2012, and permanently ceased, for M&K ES Joliet as of March 31, 2017, for M&K ES Summit as of July 31, 2017, and for M&K ES Alsip as of December 31, 2018.  (ECF No. 160-16 ¶¶ 25, 30.)

40.    On June 26, 2018, the Fund assessed M&K ES Joliet and Summit with $611,110 in partial withdrawal liability.  (ECF No. 160-14 at IAM NPF 000841; ECF No. 160-16 ¶ 32.)

41.    After M&K ES Alsip's obligation ended, the Trustees withdrew the partial assessment, and on June 14, 2019, assessed M&K ES Alsip with $6,158,482 in complete withdrawal liability.  (ECF No. 160-16 ¶¶ 32-33; ECF No. 160-8.)

42.    As of December 31, 2014, Chad was the sole owner, member, and manager of M&K ES Alsip, Joliet, and Summit, as well as of M & K Employee Solutions, LLC ("M&K ES Main"), M & K Employee Solutions, LLC – Illinois Leasing ("M&K ES Illinois Leasing"), and M & K Employee Solutions, LLC – Northern Illinois ("M&K ES Northern Illinois") (collectively, "M&K ES").  (ECF No. 160-46 ¶ 3.)

43.    In 2018, Chad transferred an 8.356164% interest in M&K ES to his wife, Jodi, and has shared 100% ownership with her since then.  (ECF No. 162-10 at 45:10-46:15, 47:8-20; ECF No. 160-47; ECF No. 160-22 ¶ 17.)

44.    While owners of M&K ES, the Bouchers were also "flipping homes, buying a home, making improvements and then reselling it."  (Supp. Shah Decl., Ex. 1 at 36:18-21.)

10

45.     With respect to all homes "flipped" by the Bouchers, all costs incurred to purchase, renovate, and sell the properties were paid from the Bouchers' joint personal funds (*e.g.*, personal credit cards, personal checks, or cash).  (ECF No. 162-10 at 22:1-10, 40:17-25, 63:14-65:4, 71:20-24, 84:14-85:1, 108:6-16, 111:7-18.)

46.     After each renovation and sale, the Bouchers used the proceeds to pay outstanding expenses, and eventually, purchase the next home to "flip."  (ECF No. 162-10 at 23:12-24:7.)

47.     Before she began flipping homes in 2016, Jodi earned income operating a daycare business for 17 years.  (ECF No. 162-10 at 11:23-12:24.)

48.     On June 9, 2016, the Bouchers purchased 4140 Coit Avenue NE, Grand Rapids, Michigan 49525 for $98,000, and on February 27, 2017, sold it for $209,900.  (ECF No. 160-22 ¶ 48.)

49.     On March 30, 2017, the Bouchers purchased 4678 Bonnie Avenue SE, Kentwood, Michigan 49508 for $127,500, and on November 6, 2017, sold it for $227,000.  (ECF No. 160-22 ¶ 48.)

50.     On November 20, 2017, the Bouchers purchased 2047 S Patterson Road, Wayland, Michigan 49348 for $96,000, and on August 7, 2018, sold it for $246,000.  (ECF No. 160-22 ¶ 48.)

51.     On September 21, 2018, the Bouchers purchased 3740 Benjamin Avenue NE, Grand Rapids, Michigan 49525 for $105,000, which on March 6, 2019 was sold for $192,000. (ECF No. 160-22 ¶ 48; ECF No. 160-26 ¶¶ 15-17.)

52.     In January 2019, the Bouchers transferred the 3740 Benjamin Ave NE property to M&K ES Main for the "full consideration" of $1.00.  (ECF No. 160-26 ¶ 16; ECF No. 162-13 at IAM NPF 002970.)

53.     The Bouchers' lawyer advised them to use a limited liability company in connection with their "home flipping" business.  (ECF No. 162-10 at 57:9-13.)

54.     On August 16, 2019, Chad established CJKA Properties, LLC ("CJKA"), a for-profit Michigan limited liability company to continue flipping homes.  (ECF No. 160-22 ¶ 49; ECF No. 160-26 ¶ 19; ECF No. 162-10 at 99:1-13; Supp. Shah Decl., Ex. 1 at 38:5-20, 97:13-98:13.)  Chad is the sole owner of CJKA.  (ECF No. 162-10 at 99:1-13.)

55.     The Bouchers' federal income tax return for the year 2020 reports Jodi's occupation as "home remodeling."  (Supp. Shah Decl., Ex. 2 at JB Subp 000052.)

56.     On September 6, 2019, CJKA purchased 4005 Filkins Drive NE, Grand Rapids, MI 49525 for $110,000, and on January 24, 2020, sold it for $238,000.  (Supp. Shah Decl., Ex. 3; Supp. Shah Decl., Ex. 4.)

57.     On February 25, 2020, CJKA purchased 2900 Coit Avenue NE, Grand Rapids, MI 49505 for $126,000, and on July 30, 2020, sold it for $212,500.  (Supp. Shah Decl., Ex. 5; Supp. Shah Decl., Ex. 6.)

58.     On June 17, 2020, CJKA purchased 3728 Williamson Avenue NE, Grand Rapids, MI 49525 for $133,000, and on January 8, 2021, sold it for $265,000.  (Supp. Shah Decl., Ex. 7; Supp. Shah Decl., Ex. 8.)

59.     On November 25, 2020, CJKA purchased 157 Guild Street NE, Grand Rapids, MI 49505 for $175,000, and on July 12, 2021, sold it for $318,250.  (Supp. Shah Decl., Ex. 9; Supp. Shah Decl., Ex. 10.)

60.     On August 9, 2021, CJKA purchased 1729 Fountainview Court SE, Caledonia, MI 49316 for $251,000, and on January 11, 2022, sold it for $369,000.  (Supp. Shah Decl., Ex. 11; Supp. Shah Decl., Ex. 12; ECF No. 162-10 at 68:16-23.)

61.     Chad characterized Jodi as the "brains" of their home flipping operation, and Jodi agreed.  (Supp. Shah Decl., Ex. 1 at 95:15-21; ECF No. 162-10 at 14:12-17.)

62.     Jodi personally found and negotiated the purchase and sale of the properties (or worked with a realtor); decided which improvements and renovations to make on the property; retained contractors to make improvements; and regularly traveled to and from the properties to conduct demolition and oversee the contractors' work.  (ECF No. 160-22 ¶ 50.)

63.     When Jodi is renovating a house for "flipping," she is typically on site at the house "every day" making improvements (*e.g.*, "taking carpet out, taking wallpaper off") and spending evenings on her phone searching for products to order.  (ECF No. 162-10 at 26:2-10.)

64.     Jodi used many of the same contractors and suppliers to renovate homes.  (ECF No. 162-10 at 54:22-56:6, 69:14-73:8.)

65.     Jodi used two realtors (Jeremy Crump and Julie Schwallier) to purchase and sell most of the properties.  (ECF No. 162-10 at 18:24-20:18, 60:18-25, 70:3-73:11.)

66.     Chad personally performed landscaping and other services on the properties; handled the finances by accounting for the costs to improve the property; and prepared and filed the Bouchers' joint tax returns.  (ECF No. 160-22 ¶ 51; ECF No. 162-10 at 30:21-31:13, 46:9-23, 82:4-10.)  He also attended closings by himself when the properties were sold.  (ECF No. 162-10 at 111:1-6.)

67.     The Bouchers deducted expenses incurred in connection with the homes they "flipped" from their joint income tax return and reported the profit on the sales.  (*See, e.g.*, ECF No. 160-25, at Schedule D.)

68.     The Bouchers' federal income tax return for the year 2020 contains a "Schedule C – Profit or Loss from Business" from CJKA's "home remodeling" activities and reports $37,717.84 in net profit.  (Supp. Shah Decl., Ex. 2 at JB Subp 000056.)

69.     The Bouchers considered their "home flipping" to be a business and intended to operate it for a profit.  (ECF No. 162-10 at 17:13-20, 109:1-14; Supp. Shah Decl., Ex. 1 at 95:15-96:2.)

70.     The Bouchers earned a profit on every home they "flipped."  (ECF No. 162-10 at 27:24-30:14, 48:22-49:12, ECF No. 160-25, at Schedule D.)